Eric Schura SCHRAGIN, Appellant

v.

The STATE of Texas, State.

No. 02–10–00510–CR.

Court of Appeals of Texas,
Fort Worth.

Aug. 16, 2012.

Danny D. Burns, Fort Worth, TX, for Appellant.

Joe Shannon, Jr., Criminal District Attorney, Charles M. Mallin, Chief, Appellate Section, Tanya S. Dohoney, Andrea Risinger, and Timothy Rodgers, Assistant Criminal District Attorneys for Tarrant County, Fort Worth, TX, for State.

PANEL: LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

## OPINION

ANNE GARDNER, Justice.

### I.  Introduction

Appellant Eric Schura Schragin appeals his conviction following a jury trial for

felony driving while intoxicated (DWI).[1] He contends in his first point that the evidence is insufficient to support his conviction because there is no evidence he operated a motor vehicle, and he argues in his second point that the State improperly commented on his post-arrest silence. We affirm.

## II. Background

Officer Daniel Gonzales was working as a patrol officer for the Fort Worth Police Department on April 12, 2008, when he received a dispatch at approximately 11:21 p.m. A caller had reported a suspicious vehicle on Strohl Street in Fort Worth that had been parked for about ninety minutes without moving. Officer Gonzales testified that when he arrived on scene, he "observed a white Mazda vehicle parked facing southbound, approximately two feet away from the curb, with the lights on." Despite the vehicle's distance from the curb, it was legally parked. Officer Gonzales testified that he "spotlighted the vehicle, and [he] observed a male slumped over in the driver's side seat." Officer Gonzales identified Appellant in open court as the person sitting in the driver's seat of the vehicle.

Officer Gonzales testified that when he approached the vehicle on foot, he saw Appellant sleeping in the driver's seat with his seat belt on. He could also hear the vehicle's engine running. Officer Gonzales testified that Appellant was sitting in the driver's seat the "way someone would sit when they're driving" and that the driver's seat was not reclined in any way. He could not recall whether the heater was on in the vehicle, but he acknowledged that the police report states that the weather was cool that evening. Even so, Officer Gonzales testified that he was wearing short sleeves and that Appellant was wearing cargo shorts and a short-sleeved shirt.[2]

Officer Gonzales knocked on the window several times, but Appellant did not wake up. The doors were locked, so Officer Gonzales shook the vehicle. Appellant then slumped to the side and woke up, and Officer Gonzales identified himself and asked Appellant to roll down the window or open the door. Officer Gonzales testified that when Appellant rolled down the window, the first thing he noticed was a strong alcohol smell emanating from inside the car and from Appellant.

According to Officer Gonzales, Appellant "took his time" exiting the vehicle when asked to do so, and upon standing outside, Appellant had to lean against the car to keep his balance. Officer Gonzales testified that he asked Appellant where he was coming from and that Appellant, after initially hesitating, said he had been in Grapevine. Appellant also told Officer Gonzales that he did not know how he had arrived at that particular location. Officer Gonzales continued:

> I asked him, were you driving the vehicle, and he said, yes. And I asked him, what made you come over to this particular area, and he goes, I don't remember. I was tired and I decided to take a nap. That was his exact answer. I remember him saying that.

> After that I asked him, well, where are you headed to or where were you going? He said, I was going to Saginaw, which is just north—a few miles north of where he was at.

---

**1.** *See* Tex. Penal Code Ann. §§ 49.04(a), .09(b)(2) (West Supp.2012).

**2.** Another officer testified that the weather was cool that night and agreed that the weather could have been "a little cool" for a person in shorts and short-sleeves.

I asked him if he knew anybody that lived—that lived in this particular area that he was parked at, and he said, no, I don't.

I asked him, do you know exactly where you're at? He looked around and said, not exactly.

Officer Gonzales further testified that Appellant failed a series of field sobriety tests and that he believed Appellant to be intoxicated from the consumption of alcohol. Officer Gonzales acknowledged, however, that he had not seen Appellant drive or otherwise move the vehicle that night.

Officer Gonzales testified that the vehicle in which Appellant was sitting was registered to A.J. Macias, a person he believed to be a realtor because of the realty signs he found when searching the vehicle. The registration report stated that the car was registered in the City of Saginaw.

Officer Collin Harris from the DWI unit was dispatched to the scene at 11:43 p.m. He arrested Appellant and transported him to jail. Officer Gonzales remained at the scene to wait for the car to be towed, and he inventoried the vehicle. He did not find any open alcoholic beverage containers, but he did notice damage to the car on one side "that appeared fresh."

Officer Harris described for the jury the process through which he escorted Appellant to the city jail in Fort Worth, including the "intox room" and reading Appellant his statutory warnings. Officer Harris testified that once Appellant was in the intox room, he refused to provide a breath specimen. He also refused to perform the "walk-and-turn" and "one-leg stand" tests. Appellant did, however, answer each of Officer Harris's questions after receiving his *Miranda*[3] warnings and indicating that he understood his rights.[4] Describing one of his questions to Appellant, Officer Harris testified, "I asked him if he was operating a vehicle at the time he was stopped[.] He said, yes."[5] Appellant told Officer Harris that he was coming from Grapevine and headed to Saginaw. Officer Harris testified that he believed Appellant to be intoxicated.

A.J. Macias testified for Appellant. He is a realtor and has known Appellant since 1996. Macias recalled the day of Appellant's arrest and testified that Appellant participated in a March of Dimes charity event that evening. He described the charity event as a "poker run" where participants went to several Chili's restaurant locations. Macias was not initially with Appellant at the charity event, though, because he was showing houses to a client.

Macias testified that he left his car parked at a house on Strohl Street earlier that day while he showed his client other houses. The client, however, received a call and needed to do something for one of his children, so the client dropped Macias off at his home office in Saginaw instead of taking him back to Strohl Street where his car was parked.

Macias testified that he later received a call from Appellant. Appellant needed a ride because the limousine in which Appellant had been riding for the charity event

---

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** The State also published the video recording of the interaction between Appellant and Officer Harris in the intox room.

**5.** Officer Harris later testified, however, that Appellant did not "make a statement to [him] as to whether or not he was driving the vehicle." From our review of the recorded interview, we note that Appellant answered each of Officer Harris's questions but did not volunteer additional information.

had broken down. Macias drove his truck and met Appellant at the second-to-last stop of the charity fundraising event, and he and Appellant stayed at the charity event for a while, going together to two different Chili's restaurants. Macias testified that he met Appellant at the first Chili's "[b]etween 3:00 and 4:00" and that they left the second Chili's at "7:00—7:00, 7:30, somewhere around there."

Macias testified that, when they left the second Chili's, he and Appellant were going to Saginaw to spend the night at his house. Macias also testified, however, that he remembered leaving his car earlier that day and that he "decided to go to the other car and just see if [he] could get [Appellant] to drive it home." Macias testified that he returned to his Mazda vehicle with Appellant "somewhere between 8:00 and 9:00 o'clock." Macias testified that Appellant exited the truck and that he threw the keys to his Mazda to Appellant. On cross-examination, Macias testified that he knew Appellant had been drinking that evening and that, looking back, he realized that Appellant had been intoxicated. Macias testified that Appellant called him several times to come back but that he told Appellant he was not coming back and to sleep in the car.

The trial court admitted Macias's cell phone record from April 2008 during Macias's testimony. Macias identified Appellant's phone number, and the exhibit reflects six calls from Appellant to Macias between 9:06 and 9:35 p.m. on April 12, 2008.

When Macias was recalled to testify the next day, he testified that he and Appellant left the second Chili's restaurant around 7:00 p.m. and that they went to dinner at a Japanese restaurant before he dropped Appellant off at his other car.

Jackie Matliech testified that she also attended the charity event. She testified that it began around lunchtime and lasted for about four hours. Matliech also testified that she knows Macias but that she did not see Macias at the charity event.

Phillip Foreman testified that he is a limousine driver and that he was hired to drive Appellant and others during the charity event. Foreman confirmed that the air conditioner in his limousine went out that day and that he was not able to finish driving Appellant and the others to the rest of the fundraiser. Foreman testified that he left Appellant and the others at a Chili's restaurant in Flower Mound.

## III. Sufficiency of the Evidence

Appellant contends in his first point that the evidence is insufficient to support his DWI conviction because "the evidence just does not show any operation of a motor vehicle." Appellant does not contest the other elements of his felony DWI conviction.

### A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Isassi v. State,* 330 S.W.3d 633, 638 (Tex. Crim.App.2010).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Isassi,* 330 S.W.3d at 638. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex.Code

Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State,* 270 S.W.3d 564, 568 (Tex. Crim.App.2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009). Thus, when performing an evidentiary sufficiency review, we may not reevaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State,* 235 S.W.3d 742, 750 (Tex.Crim.App.2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State,* 214 S.W.3d 9, 16–17 (Tex.Crim.App.2007). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793; *Isassi,* 330 S.W.3d at 638. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Isassi,* 330 S.W.3d at 638; *Hooper,* 214 S.W.3d at 13.

**B.  Applicable Law**

█ "Operating" is not defined in the Texas Penal Code. *Kirsch v. State,* 357 S.W.3d 645, 649–50 (Tex.Crim.App.2012). However, the court of criminal appeals has instructed that, for purposes of reviewing the sufficiency of the evidence for a DWI conviction, a person "operates" a vehicle when "the totality of the circumstances ... demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Denton v. State,* 911 S.W.2d 388, 390 (Tex.Crim.App.1995); *see Kirsch,* 357 S.W.3d at 650–51 (reaffirming *Denton*'s definition of "operate" for sufficiency review purposes). Whether a person was operating his vehicle is a question of fact for the factfinder. *Kirsch,* 357 S.W.3d at

652 (citing Tex.Code Crim. Proc. Ann. art. 36.13 (West 2007); *Brown v. State,* 122 S.W.3d 794, 798–99 (Tex.Crim.App.2003), *cert. denied,* 541 U.S. 938, 124 S.Ct. 1678, 158 L.Ed.2d 359 (2004)).

The State cites several cases in which persons were found sleeping in their vehicles and in which reviewing courts found sufficient evidence to support the DWI convictions. For example, in *Molina v. State,* No. 07–09–00022–CR, 2010 WL 980560, at *1 (Tex.App.-Amarillo Mar. 18, 2010, pet. ref'd) (mem. op., not designated for publication), the court of appeals described the applicable facts as follows:

> Austin police officers were called out to investigate a suspicious vehicle in a cul-de-sac. When the police officers arrived, they observed appellant asleep behind the wheel of the vehicle. The keys were in the vehicle's ignition and the car and radio were both on. Appellant was also in a position in the vehicle that he was able to reach the brake pedal. The police officers proceeded to wake up appellant and, after conducting field sobriety tests, arrested him for driving while intoxicated.

*Id.* (internal footnote omitted). The court added in a footnote that the video from the patrol car showed the vehicle's lights "flickering on or off during the investigation." *Id.* at *1 n. 1. Holding that sufficient evidence supported the conviction, the court stated that "the jury could have determine[d] that the running vehicle, the flickering brake lights, and the activated radio were indications that appellant had taken actions that affected the functioning of the vehicle and, thus, was operating the vehicle prior to falling asleep." *Id.* at *2. The court added that although "no one observed appellant start the vehicle, the fact that appellant was the only person in the vehicle, in the driver's seat, and able to operate the brake lights is circumstantial

evidence that the jury could have used in determining the guilt of appellant." *Id.*

In *Reynolds v. State*, 744 S.W.2d 156, 158–59 (Tex.App.-Amarillo 1987, pet. ref'd), the court held that sufficient evidence supported the DWI conviction, and it described the facts as follows:

> [T]he arresting officer testified that he found appellant alone behind the wheel of a car that was half in a ditch and half on a farm-to-market road. He testified that appellant's feet were on the floorboard of the driver's seat under the steering wheel and that no one else was in the car. The officer also testified that he found no one else in the vicinity and found no liquor bottles either in or around the vehicle. The driver's door was closed.
>
> The officer also said that appellant admitted to the officer that he was driving the vehicle in which he was found....

*Id.* at 158; *see also Dornbusch v. State*, 262 S.W.3d 432, 433–38 (Tex.App.-Fort Worth 2008, no pet.) (holding evidence sufficient; defendant found asleep in vehicle behind restaurant with headlights on, engine running, radio playing, and vehicle not moving because wheels were touching curb).

Appellant primarily relies on *Texas Department of Public Safety v. Allocca*, 301 S.W.3d 364, 365–66 (Tex.App.-Austin 2009, pet. denied) (op. on reh'g), to support his argument that the evidence is insufficient to establish that he operated a motor vehicle. In that case, the court of appeals affirmed the trial court's determination that substantial evidence did not support an administrative judge's decision to suspend Allocca's driver's license for driving while intoxicated. *Id.* at 365–66. An officer responded to a report concerning a suspicious vehicle parked in a Jiffy Lube parking lot and found Allocca sleeping in the driver's seat of his vehicle with the engine running. *Id.* at 366. Allocca testified at the administrative hearing that he worked at the business where his vehicle was parked, that he had gone to a sports bar with friends, and that a friend had dropped him off at his vehicle later that evening. *Id.* Allocca's vehicle "was parked in his usual parking space behind the building where he worked." *Id.* at 368. Allocca testified that the vehicle was not running when he first went to sleep but that he later turned it on to use the air conditioner. *Id.* at 366. He also testified that the vehicle was in park and that his feet were on the floorboard while he slept. *Id.* Moreover, Allocca had reclined the driver's seat to better accommodate sleeping and had not turned on the headlights. *Id.* at 368–69. Based on these facts, the court affirmed the trial court's determination that the administrative judge's decision was not supported by substantial evidence. *Id.* at 369–70.[6]

## C. Application

■ Setting aside that *Allocca* was a civil case decided under a substantial evi-

---

**6.** Appellant cites *York v. State*, 342 S.W.3d 528, 534–38 (Tex.Crim.App.2011), *cert. denied*, —— U.S. ——, 132 S.Ct. 1093, 181 L.Ed.2d 977 (2012), in which the court held that the officer had reasonable suspicion to detain York for public intoxication upon finding him asleep in his car in a gas station parking lot. Appellant argues that the "Court of Criminal Appeals did not find that there was even a reasonable suspicion that DWI was a crime that needed to be investigated."

However, the issue decided was whether the officer illegally detained York and thus whether the subsequent search that revealed drugs on York's person was legal. *Id.* at 534–38. York was not prosecuted for DWI, and the court thus had no reason to address whether the officer had reasonable suspicion for that offense since it had already held that there was reasonable suspicion to suspect public intoxication. *See id.*

dence standard of review and was not reviewed by the court of criminal appeals, some of the facts from that case resemble the evidence presented to the jury in this case. For example, Allocca was found asleep in the driver's seat of his vehicle, with the engine running and the vehicle in park, in a public parking lot after being dropped off there by a friend. *See Allocca*, 301 S.W.3d at 366. Allocca had testified that the vehicle was running because he was hot and needed to use the air conditioner while he slept. *Id.* Here, Appellant presented evidence that a friend dropped him on Strohl Street, tossed him the keys to the Mazda, and drove away and that Appellant slept in the car with the engine running to utilize the car's heater since it was cool outside.

Allocca had reclined the driver's seat, *see id.* at 368–69, but Appellant had his seatbelt on and had not reclined the driver's seat. There is also no discussion in *Allocca* that suggests that he had admitted driving his vehicle, *see id.* at 366–69, but the jury in this case heard testimony from Officers Gonzales and Harris that Appellant admitted to each of them that he had been driving the vehicle. The jury also heard testimony that Appellant said he was going from Grapevine to Saginaw. Moreover, the jury, in carrying out its role as the sole judge of the weight and credibility of the evidence, could have disbelieved Macias's testimony concerning the sequence of events leading up to Appellant's sleeping in the car. *See generally* Tex.Code Crim. Proc. Ann. art. 38.04; *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim.App.2008), *cert. denied*, —— U.S. ——, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009); *see also Kirsch*, 357 S.W.3d at 652 (stating that whether a person was operating his vehicle is a question of fact for the factfinder); *Brown*, 122 S.W.3d at 798–99 (same).

Viewing all of the evidence in the light most favorable to the jury's verdict, and deferring to the jury's authority to draw reasonable inferences from basic facts to ultimate facts, we conclude that the evidence was sufficient to enable the jury to rationally find, beyond a reasonable doubt, that Appellant operated a motor vehicle while intoxicated. *See Dornbusch*, 262 S.W.3d at 433–38; *Reynolds*, 744 S.W.2d at 158–59; *see also Molina*, 2010 WL 980560, at *1–2. We therefore overrule Appellant's first point.

## IV. Post–Arrest Silence

Appellant contends in his second point that the trial court erred by overruling his objection to the prosecutor's comment about his post-arrest silence.

### A. Applicable Law

■■■ The federal constitution's guarantee of due process prohibits comment on an accused's post-arrest silence after *Miranda* warnings are given. *Doyle v. Ohio*, 426 U.S. 610, 617–20, 96 S.Ct. 2240, 2244–45, 49 L.Ed.2d 91 (1976); *see Fletcher v. Weir*, 455 U.S. 603, 606–07, 102 S.Ct. 1309, 1311–12, 71 L.Ed.2d 490 (1982). The prohibition against the use of a defendant's post-arrest silence contained in the United States Constitution is based on the unfairness of assuring a suspect he has the right to remain silent and then using that silence against him. *See Wainwright v. Greenfield*, 474 U.S. 284, 292, 106 S.Ct. 634, 639, 88 L.Ed.2d 623 (1986).

■■■ The Texas constitution provides additional protection and prohibits comment on a person's post-arrest silence both before and after *Miranda* warnings are given. *Sanchez v. State*, 707 S.W.2d 575, 579–80 (Tex.Crim.App.1986). Use of a defendant's post-arrest silence violates the prohibition against self-incrimination, even if *Miranda* warnings have not been given.

*See* Tex. Const. art. I, § 10; Tex.Code Crim. Proc. Ann. art. 38.08 (West 2005) (providing that a defendant's failure to testify in his own behalf "shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause"); *see also Franklin v. State*, 693 S.W.2d 420, 428 (Tex.Crim. App.1985) (stating that article 38.22 of the code of criminal procedure has consistently been construed as prohibiting proof of an accused's silence while under arrest and which tends to communicate thoughts of the defendant of an incriminating nature). This case, however, concerns only a comment about Appellant's post-arrest, post-*Miranda* silence, and the difference between federal and Texas law is not at issue.

**B. Discussion**

Appellant contends that the trial court should have sustained his objection to the following question because it improperly commented on his right to post-arrest silence:

> Q. How many times, during your interview in the intoxilyzer room, did the Defendant state, I wasn't driving a vehicle, I didn't drive a car? How many times did he do that?

Appellant objected before Officer Harris answered the question, and the trial court excused the jury to address the objection, eventually overruling it. When the jury returned, the following exchange occurred:

> Q. (BY MR. RODGERS) Officer Harris, while you were in the intoxilyzer room after the Defendant had stated he understood his rights and waived them and answered your questions, did the Defendant ever make a statement to you as to whether or not he was driving the vehicle?

MR. BURNS: The same objection.

THE COURT: Overruled.

THE WITNESS: No, he did not.

The prosecutor then moved to a different topic of questioning.

Appellant argues that Officer Harris never asked him whether he had driven a motor vehicle *after* he had his first drink and that the State "realized that glaring omission" and used the foregoing questions to fill that void. Appellant further contends that the State sought "to use [his] failure to volunteer additional information as a sign of guilt." Appellant's argument, however, is premised on the concept that he remained silent after his arrest. Appellant did not do so and instead answered Officer Harris's questions in the intoxilyzer room. Among other things, Appellant was asked (and answered) whether he was operating a vehicle,[7] the name of the street where he was stopped, where he was headed, where he had been, what he had done in the past three hours and with whom, when he last ate, what he last ate, when he took his last drink, how much he had to drink, how often he drinks alcohol, and when and for how long he last slept.

■ "The State cannot improperly comment upon a defendant's post-arrest silence when he did not remain silent." *Salazar v. State*, 131 S.W.3d 210, 215 (Tex. App.-Fort Worth 2004, pet. ref'd); *see Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim.App.2004) (holding closing argument did not comment on right to remain silent because the defendant waived post-arrest silence by giving written statement to police after receiving *Miranda* warnings); *Maxson v. State*, 79 S.W.3d 74, 76–77 (Tex. App.-Texarkana 2002, pet. ref'd) (holding *Doyle* and its progeny not applicable because Maxson did not exercise his right to

---

7. Appellant answered, "Yes, sir."

remain silent "but chose to attempt to explain his actions"); *Wearren v. State,* 877 S.W.2d 545, 547 (Tex.App.-Beaumont 1994, no pet.) ("The central flaw in appellant's [post-arrest silence] argument is [that] he was not silent after arrest."); *see also Gee v. State,* No. 01–07–00068–CR, 2007 WL 4387336, at *3 (Tex.App.-Houston [1st Dist.] Dec. 13, 2007, pet. ref'd) (mem. op., not designated for publication) (holding Gee could not establish ineffective assistance of counsel for failure to object to comment on post-arrest silence because he "answer[ed] 'everything ... asked' of him after [the officer] informed him of his legal rights," thereby waiving his right to remain silent).

 Appellant did not remain silent after receiving his *Miranda* warnings and instead answered every question he was asked during his videotaped interview. Appellant does not argue that he was coerced into answering Officer Harris's questions, that he did not understand his rights, or that his answers to Officer Harris's questions were in any way involuntary. Thus, by answering Officer Harris's questions in the intoxilyzer room (the video of which the jury watched during the State's presentation of evidence), Appellant waived his right to remain silent after his arrest. *See Gee,* 2007 WL 4387336, at *3; *see also Garcia,* 126 S.W.3d at 924; *Salazar,* 131 S.W.3d at 215; *Maxson,* 79 S.W.3d at 76–77; *Wearren,* 877 S.W.2d at 547. The State could therefore use the entirety of Appellant's videotaped interview, "including the implicit references to his silence contained therein," as affirmative evidence of his guilt. *United States v. Pando Franco,* 503 F.3d 389, 396–97 (5th Cir.2007); *see United States v. Fambro,* 526 F.3d 836, 842–43, 847 (5th Cir. 2008) (holding officer's testimony concerning Fambro's failure to disclaim knowledge of the firearm he was convicted of

possessing did not violate *Doyle* principle because Fambro voluntarily answered questions after receiving *Miranda* warnings). Consequently, the State did not, under the circumstances of this case, improperly comment on Appellant's post-arrest silence by asking the foregoing questions of Officer Harris, and the trial court did not abuse its discretion by overruling Appellant's objection. We overrule Appellant's second point.

## V. Conclusion

Having overruled each of Appellant's two points, we affirm the trial court's judgment.