**AFFIRM; and Opinion Filed June 18, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00178-CR

### JEFFREY KING, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court No. 9**
**Dallas County, Texas**
**Trial Court Cause No. 10-13223**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Myers, and Lewis
Opinion by Justice Lewis

A jury found appellant Jeffrey King guilty of misdemeanor driving while intoxicated. The trial court assessed his punishment at 120 days confinement in jail, probated for twelve months, and a $1000 fine. On appeal, King challenges the trial court's denial of his motion to suppress. He also challenges the sufficiency of the evidence supporting his conviction. Because all dispositive issues are settled in law, we issue this memorandum opinion. Tex. R. App. P. 47.2(a), 47.4. We affirm the judgment of the trial court.

### BACKGROUND

Early on April 30, 2010, Carrollton police officers were dispatched in response to a call regarding a suspicious vehicle at a RaceTrac gas station in Carrollton. A RaceTrac employee called the police because he observed King asleep in the driver's seat of his vehicle, parked in the parking lot in front of the RaceTrac gas station with the engine running. All four tires on

King's vehicle were flat. According to the RaceTrac employee, the car had been there for thirty minutes.

Carrollton police officer Danny Stoner was the first police officer to arrive on the scene, and he parked his police car approximately one car-length directly behind King's vehicle. Upon arrival, Stoner observed that King's tires were shredded and severely damaged from being driven on while flat. King's vehicle also had a damaged fender. Stoner observed that King appeared to be passed out or sleeping. While Stoner waited for backup to arrive, King opened the car door and started to move around. Also, according to the police car video, the brake lights of King's vehicle came on. Stoner testified that at that point, it became a safety issue so Stoner reached in, turned off the engine, and removed the keys from the vehicle. Stoner testified that when King opened the car door, Stoner smelled the odor of alcohol emitting from the vehicle. As King began to awaken, Stoner asked him how it was going, what was going on, and said "hello" several times. King did not respond. Stoner again said "hello" and identified himself as a police officer, to no response. Stoner asked King several times if he knew where he was, and King responded, "yes sir" but did not elaborate. Finally Stoner asked King for his identification, and King handed Stoner a credit card. King told Stoner he had been hanging out with friends at Champs Sport's Bar in Irving. Stoner asked King several times how much he had had to drink that evening but did not get a response. When asked what he had been drinking, King said he had been drinking beer. When asked how his vehicle had been damaged or why his tires were flat, King said he hit something but did not know what he hit. When asked if he knew where he was, King told Stoner he was at a Sonic in Plano, a location some fifteen miles from the Carrollton RaceTrac gas station.

Carrollton police officer Jennifer Vickery Skertich confirmed King was confused about his location. Skertich testified that King's speech was slurred, and she smelled a strong odor of

alcohol. Skertich administered three field sobriety tests on King and King failed all three. Skertich also testified that King was unable to recite the alphabet, starting with the letter "d" and ending with the letter "s." Skertich believed King lacked the normal use of his mental or physical faculties, so she arrested King for driving while intoxicated. King refused to submit to the Intoxilyzer breath test at the police station.

King pleaded not guilty to the misdemeanor charge of driving while intoxicated and his case proceeded to a jury trial. King filed a motion to suppress all evidence of the stop, search, detention, warrant, and arrest, arguing there was no reasonable suspicion for the stop. The trial court conducted a hearing on the motion and after hearing testimony from Stoner and Skertich, the trial court denied King's motion to suppress. King then requested, and the trial court issued, findings of fact on King's motion to suppress evidence. The trial court found that because the officers were acting in a community caretaking role, it was their duty to investigate and determine if King had passed out and needed help, and also to determine if King had been in an accident or needed assistance. The trial court also found that "because the officers were acting in a community caretaking role, which was their sole motivation for approaching the defendant, they had a legal reason to approach and stop the defendant." The case proceeded to trial. After the jury rendered a verdict of guilty and the trial court assessed punishment, King filed a motion for new trial which was overruled by operation of law. This appeal followed.

## DISCUSSION

### A. DENIAL OF MOTION TO SUPPRESS

In his first issue, King argues the trial court erred in denying his motion to suppress because his stop and detention were not justified under the community caretaking exception to a warrant requirement. We review a trial court's ruling on a motion to suppress for an abuse of discretion, and will overturn the trial court's ruling only if it is outside the zone of reasonable

disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We apply a bifurcated standard of review, giving almost complete deference to the trial court's determination of historical facts and mixed questions of law and fact that rely upon an assessment of the credibility and demeanor of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013); *Martinez*, 348 S.W.3d at 923. If the trial court makes express findings of fact, we review the evidence in the light most favorable to the trial court's ruling and determine whether the evidence supports these factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We must uphold the trial court's ruling if it is reasonably supported by the record and correct under any applicable theory of law. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013); *Hereford v. State*, 339 S.W.3d 111, 117–18 (Tex. Crim. App. 2011).

At the hearing on the motion to suppress, the parties stipulated that the underlying case involved a seizure without a warrant. Under the Fourth Amendment to the United States Constitution, a seizure of a person must be objectively reasonable in light of the particular circumstances of the case. *See Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002) (citing *Maryland v. Wilson*, 519 U.S. 408, 411 (1997); *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)). "Whether a stop is reasonable depends on 'a balance between the public interest and the individual's right to personal security free from arbitrary interference by law enforcement.'" *Id*. (quoting *Wilson*, 519 U.S. at 411). A police officer may stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion founded on specific, articulable facts which, when combined with rational inferences from those facts, would lead the officer to conclude that the person is, has been, or soon will be engaged in criminal activity. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). But even without reasonable suspicion or

probable cause that an offense has been committed, a police officer may reasonably stop or detain a person through the exercise of his community caretaking function. *Corbin*, 85 S.W.3d at 276; *Wright v. State*, 7 S.W.3d 148, 151–52 (Tex. Crim. App. 1999).

As part of an officer's duty to "serve and protect," an officer may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe is in need of help. *Wright*, 7 S.W.3d at 151. The community caretaking function, however, is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973); *see also Corbin*, 85 S.W.3d at 276–77. A police officer may not properly invoke his community caretaking function if he is primarily motivated by a non-community caretaking purpose. *Corbin*, 85 S.W.3d at 277. Here the evidence indicates that the police responded to a call by a RaceTrac employee that there was a vehicle in the parking lot with its engine running, four flat tires, and a person asleep behind the wheel. At the hearing on King's motion to suppress, both officers testified they approached King only after dispatch received a call concerning a suspicious vehicle. Stoner testified that the RaceTrac employee was concerned about the well-being of the person in the vehicle. Stoner testified that dispatch did not inform the officers that King had been involved in the commission of a crime. Upon arriving at the scene, Officer Stoner observed the damage to the vehicle and the four flat, shredded tires. He also observed King behind the wheel of the vehicle with the engine running, but could not determine whether King was asleep or passed out. When King began moving around, Stoner tried to wake him up, repeatedly saying hello, asking him how it was going and what was going on. A second officer with Stoner told King they were worried about him. The record supports the trial court's conclusion that Stoner was motivated by his community caretaking function when he engaged King. *See id.*; *see also Hernandez v. State*, 376 S.W.3d 863, 874 (Tex. App.—Fort Worth 2012, no pet.). We see no reason to second guess the

trial judge's determination of an issue that is supported by the record and depends on credibility and demeanor. *See Gonzales v. State*, 369 S.W.3d 851, 855 (Tex. Crim. App. 2012).

Once it is determined that an officer was primarily motivated by his community caretaking function, it must then be determined whether the officer's belief that the defendant needed help was reasonable. *Corbin*, 85 S.W.3d at 277; *Wright*, 7 S.W.3d at 151–52. In evaluating whether an officer reasonably believed that a person needed help, courts consider four non-exclusive factors: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance other than that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others. *Corbin*, 85 S.W.3d at 277; *Wright*, 7 S.W.3d at 152. Because the purpose of the community caretaking exception is to allow an officer to "seize" and assist a person whom he reasonably believes is in need of help, the first factor is entitled to the greatest weight. *See Corbin*, 85 S.W.3d at 277; *Hernandez*, 376 S.W.3d at 874. The greater the nature and level of distress exhibited, the more likely police involvement will be a reasonable exercise of the community caretaking function. *See Corbin*, 85 S.W.3d at 277; *Hernandez*, 376 S.W.3d at 874.

King argues that evidence of the first factor, the nature and level of the distress exhibited, is almost nonexistent. King contends the evidence reflects he was not in distress but was just asleep. The State responds that when police officers find a driver passed out in a vehicle, that is an indication that the person may be in some type of distress and it is reasonable for officers to investigate the cause of the driver's condition. The State also argues there were other indications of possible distress—damage to the vehicle and four flat tires, and the fact that King was passed out behind the wheel of the vehicle with the engine still running. We conclude that the first factor weighs in favor of the detention. "Courts have never required an officer to know, with any

degree of certainty, the specific distress an individual may be suffering." *Gonzales*, 369 S.W.3d at 856. Being asleep or unconscious in a damaged vehicle with four flat tires and the engine running demonstrates distress—mechanical, health-related, or otherwise. *See Windham v. State*, No. 04-13-00284-CR, 2014 WL 769333, at *3 (Tex. App.—San Antonio Feb. 26, 2014, no pet.) (mem. op., not designated for publication) ("There is no question that responding to a report of an unresponsive person in a parked car, regardless of its location, falls within a police officer's community caretaking function."); *Yocom v. State*, No. 02–03-181-CR, 2004 WL 742888, at *7 (Tex. App.—Fort Worth April 8, 2004, pet. ref'd) (not designated for publication) ("Being asleep or unconscious, slumped over the wheel of a truck with its motor running, in the early morning hours, in a closed bank parking lot, near an ATM that the officer knew had previously been the site of at least two robberies, demonstrates an extremely high level of distress."); *see also* WAYNE R. LaFAVE, SEARCH AND SEIZURE §7.4(f) (5th ed. 2012) ("If the police find a person unconscious or disoriented and incoherent in a vehicle (or find such a person elsewhere and connect him with a nearby vehicle), it is reasonable for them to enter the vehicle for the purpose of giving aid to the person in distress and of finding information bearing upon the cause of his condition.").

With respect to the second and third factors, King argues he was parked at a gas station, a location where he could have received assistance if needed. Although the State agrees that the RaceTrac gas station was open and could have been a source of assistance, the State points out that the RaceTrac employee called the police for assistance, indicating the employee believed the situation necessitated outside or official intervention. The State further contends that King was alone in the vehicle, had been at the location for over thirty minutes, and no one had arrived to assist him. Although King was alone in his vehicle, he was not in an isolated area and had

access to an open gas station if he needed assistance. We conclude the second and third factors weigh against the detention.

The fourth factor, the extent to which King was a danger to himself or others, is less straight-forward. King argues he was not a danger to himself or others because his car was parked. The State responds that even though King's vehicle was parked, King was a danger to himself because he was passed out behind the wheel of a damaged vehicle with four flat tires and the engine running. While Stoner witnessed indicia of distress, he was unaware of King's precise distress, much less whether the distress rose to a level of danger to King or others. While Stoner waited for his backup to arrive, he saw King begin to move around inside the car. Stoner testified that at that point, it became a safety issue because he was afraid King would try to drive away in the damaged vehicle. Although the vehicle was stopped, the engine was still running. If King was incapacitated and accidentally set the vehicle in motion again, either he or others could have been injured. We conclude the fourth factor weighs in favor of the detention. Viewed in the light most favorable to the trial court's ruling, we hold that the evidence in the record reasonably supports a conclusion that King's initial encounter with the Carrollton police officers was justified by community caretaking. *Corbin*, 85 S.W.3d at 276; *Wright*, 7 S.W.3d at 151–52.

Even if we were to conclude that the evidence did not support a conclusion that King's encounter with the police was justified by community caretaking, we are not limited to consideration of that legal theory and can uphold the trial court's ruling under any legal theory supported by the facts. *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013). King argues the trial court erred in finding that the community caretaking exception applied because the officers and the State did not consider this to be a community caretaking stop, did not present evidence to the trial court that it was a community caretaking stop, and did not present argument to the trial court that it was a community caretaking stop. On appeal, the State argued several

alternative legal theories as justification for King's warrantless arrest. The State contends King was not detained until he was awake and was subjectively aware of any restraint. The evidence demonstrates that Officer Stoner stood by King's car, observing King and waiting for backup to arrive. As Stoner watched, King began moving around and opened his car door. By the time King was awake enough to respond to Stoner, the officers had reasonable suspicion to detain him for further investigation. *See York v. State*, 342 S.W.3d 528, 537 (Tex. Crim. App. 2011). Alternatively, the State asserts the initial contact between Officer Stoner and King was a consensual encounter that escalated into an investigative detention supported by reasonable suspicion. Officer Stoner did not need any justification for approaching King's vehicle, observing King, or approaching and speaking to King. *See State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008). Up to the point where King opened his door, Stoner's actions were justified as a voluntary encounter. *See State v. Priddy*, 321 S.W.3d 82, 88 (Tex. App.— Fort Worth 2010, pet. ref'd). Stoner testified that when King opened the car door, he appeared to be extremely intoxicated. King did not notice when Stoner removed the keys from the ignition of King's vehicle. King was disoriented, did not know where he was, did not know what he had hit to damage his car and shred all of his tires, and had the smell of alcohol on his breath. Once King opened his car door, the voluntary encounter became an investigative detention based upon reasonable suspicion that King had committed the offense of driving while intoxicated. *See id.* at 86–88.

We uphold the trial court's ruling if it is reasonably supported by the record and correct under any applicable theory of law. *See Wade*, 422 S.W.3d at 667; *Hereford,* 339 S.W.3d at 117–18. The trial court did not err in denying King's motion to suppress. King's first issue is overruled.

**B. SUFFICIENCY OF THE EVIDENCE**

In his second issue, King argues the evidence is insufficient to support his conviction. King was charged with "unlawfully operat[ing] a motor vehicle in a public place, while intoxicated, in that the defendant did not have the normal use of his mental and physical faculties." According to King, there was insufficient evidence to establish he was operating the vehicle and that he was intoxicated while operating the vehicle. We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). We examine all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *see Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the trial court's determinations of witness credibility and weight of the evidence, and may not substitute our judgment for that of the fact finder. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise*, 364 S.W.3d at 903. Furthermore, this standard is the same for both direct and circumstantial evidence. *See Wise*, 364 S.W.3d at 903; *Hooper*, 214 S.W.3d at 13.

A person commits the offense of driving while intoxicated if the person was intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2013). The word "operating" is not defined in the penal code, but case law instructs that

–10–

" 'operate' is a common term that has not acquired a technical meaning and may be interpreted according to its common usage." *Kirsch v. State*, 357 S.W.3d 645, 650 (Tex. Crim. App. 2012). "Operate" means when "the totality of the circumstances … demonstrate[s] that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995); *accord Abraham v. State*, 330 S.W.3d 326, 331 (Tex. App.—Dallas 2009, pet. dism'd). A defendant does not have to cause the vehicle to move or not move in order to operate the vehicle within the meaning of the statute. *See Denton*, 911 S.W.2d at 389. Whether a person is operating his vehicle is a question of fact for the factfinder. *Kirsch*, 357 S.W.3d at 652; *Schragin v. State*, 378 S.W.3d 510, 515 (Tex. App.—Fort Worth 2012, no pet.)

King argues that neither testifying officer actually saw him operate the vehicle. However, we conclude that the totality of the circumstances in this case demonstrates that King took action to affect the functioning of his vehicle in a manner that would enable its use. *See Denton*, 911 S.W.2d at 390. King was the only person in the vehicle. King was sitting in the driver's seat, the keys were in the ignition, and the engine was turned on. The police car video shows the brake lights of the vehicle illuminated as King began to move around inside the vehicle. Viewing the evidence and the inferences therefrom in the light most favorable to the jury's verdict, we conclude that the jury could rationally find, beyond a reasonable doubt, that King operated the vehicle. *See Denton*, 911 S.W.2d at 389–90; *see also Schragin*, 378 S.W.3d at 517 (finding defendant operated vehicle under circumstances showing car legally parked for about 90 minutes without moving, engine running, lights on, and defendant slumped over in driver's seat asleep with seat belt on); *Roberson v. State*, No. 05-10-01350-CR, 2012 WL 4801511, at *2 (Tex. App.—Dallas Oct. 10, 2012, no pet.) (mem. op., not designated for publication) (finding defendant operated vehicle where the car's engine, running lights, and air

conditioner were on, the car was parked, and the defendant was passed out or asleep in the driver's seat of the vehicle).

Although King does not appear to specifically challenge the evidence supporting his intoxication at the time of his arrest, King argues that the State did not establish a link between his intoxication and his operation of the vehicle. "In order for the evidence to be sufficient to support a conviction for driving while intoxicated, there must be a temporal link between the defendant's intoxication and his driving." *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). However, such a conviction may be supported solely by circumstantial evidence. *Id*.

King admitted that he had been drinking beer that evening. The evidence demonstrates that King drove from a bar in Irving to the RaceTrac gas station in Carrollton; however, when asked if he knew where he was, King told the officers he was at a Sonic in Plano, some fifteen miles from his actual location. When asked how his car had been damaged and all four tires shredded, King told the officers he hit something but did not know what he had hit. The evidence reflects that King was asleep or passed out in the driver's seat of the vehicle with the keys in the ignition and the engine running. The evidence further reflects that King remained asleep or passed out at least as long as it took the RaceTrac employee to report his presence to the police, and for Officer Stoner to arrive at the scene. Finally, the evidence demonstrates that after speaking with King and administering the field sobriety tests, the officers arrested King for driving while intoxicated. Viewing the evidence and the inferences therefrom in the light most favorable to the jury's verdict, we conclude that the evidence was sufficient to enable the jury to rationally find, beyond a reasonable doubt, that King operated a motor vehicle while intoxicated. *See Kuciemba*, 310 S.W.3d at 462; *Abraham*, 330 S.W.3d at 331. We overrule King's second issue.

## CONCLUSION

Having decided both of King's issues against him, we affirm the judgment of the trial court.

/David Lewis/
DAVID LEWIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130178F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JEFFREY KING, Appellant

No. 05-13-00178-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 9, Dallas County, Texas
Trial Court Cause No. 10-13223.
Opinion delivered by Justice Lewis.
Justices Lang-Miers and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 18th day of June, 2014.

/David Lewis/

DAVID LEWIS
JUSTICE