Bejoy Plathottam ABRAHAM,
Appellant,

v.

The STATE of Texas, Appellee.

No. 05–08–00008–CR.

Court of Appeals of Texas,
Dallas.

July 2, 2009.

Discretionary Review Dismissed
Dec. 16, 2009.

Rehearing Overruled Aug. 13, 2010.

Jeffrey L. Clark, Lance Eric Caughfield, Kelsoe, Anderson, Khowry & Clark, L.L.C., Dallas, TX, for Appellant.

Shauna J. Wright, Kelly Hart and Hallman, L.L.P., Fort Worth, TX, for Appellee.

Before Justices BRIDGES, O'NEILL, and FITZGERALD.

## OPINION

Opinion By Justice FITZGERALD.

A jury found appellant Bejoy Plathottam Abraham guilty of misdemeanor driving while intoxicated. The trial court assessed his punishment at ninety days' confinement in jail, probated for twelve months, and a $500 fine. On appeal, Abraham challenges the trial court's denial of his motion to suppress and his motion to dismiss; he also challenges the sufficiency of the evidence supporting his conviction. We affirm the trial court's judgment.

### BACKGROUND

Sergeant Brian Sartain was employed by the City of Frisco as a police officer in August 2005. Sartain was on traffic patrol during the early morning hours of August 13; his car was parked on the side of Dallas Parkway in Frisco. At approximately three o'clock, a civilian driver pulled up next to Sartain's car and told him there was a vehicle stopped in the middle of the roadway just south of that location and the person in the car appeared to be passed out. Sartain located the vehicle, which was stopped in the center lane at the intersection of Dallas Parkway and Highway 121, just inside Plano city limits. Sartain approached the vehicle to check on the occupant, appellant Abraham. The car's engine was running, and it was in gear. Sartain "beat on" Abraham's window for several minutes until Abraham was roused and rolled down the car window. Sartain smelled alcohol as soon as the window opened, so he reached in, turned the car off, and put the keys on top of Abraham's vehicle. Then he called his dispatch to have them notify Plano officials, so Plano officers could come out and take care of the situation. Sartain did not converse with Abraham.

Officer James Quillin, a police officer for the City of Plano, arrived three or four minutes after being notified of the situation. Sartain informed Quillin of the circumstances under which he found the vehicle and Abraham. Once another Plano officer arrived for back-up, Sartain left the scene and returned to Frisco.

When Quillin approached Abraham, he smelled alcohol on Abraham's breath. Quillin began a short interview with Abraham and asked him if he had been drinking. Abraham acknowledged he had; he told Quillin he was on his way home from a bar in Dallas where he had consumed four beers. Quillin administered three field sobriety tests on Abraham, and Abraham failed all three. Quillin believed Abraham lacked the normal use of his mental or physical faculties, so he placed Abraham under arrest for driving while intoxicated.

A jury found Abraham guilty of driving while intoxicated, and the trial court sentenced him to ninety days' confinement in jail, probated for twelve months, and a $500 fine. Abraham appeals.

### MOTION TO SUPPRESS

In his first issue, Abraham contends the trial court erred by denying his motion to suppress. In the motion, Abraham argued that Sergeant Sartain, a Frisco police officer, did not have jurisdiction to stop Abraham in Plano. At the hearing on the motion, Officer Quillin testified to his and Sartain's activities leading up to Abraham's arrest. The trial court denied the motion and issued findings of fact and conclusions of law. The findings adopted Quillin's testimony and specifically found Quillin a credible witness who had given true testimony concerning his basis for arresting and searching Abraham. The court concluded Abraham was encountered by Sartain, but Sartain contacted authorities who sent Quillin, a Plano officer with jurisdiction in the location, to investigate

the incident. The court further concluded that Quillin's observations and testing yielded probable cause to arrest and search Abraham.

We review a trial court's ruling on a motion to suppress under a bifurcated standard. We give almost total deference to the trial court's determination of historical facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Then we review de novo the court's application of the law to the facts. *Id.* at 88.

In this case, the facts concerning the two police officers' actions are not in question, with one exception. Abraham asserts that Sartain stopped Abraham for a traffic offense. Neither the record nor the trial court's findings support that assertion. Indeed, factually, there is no evidence Sartain "stopped" Abraham at all. Instead, the record is clear that Abraham's vehicle had been stopped for a considerable period of time when Sartain came upon it. Nor is there any evidence in the record that Sartain spoke to Abraham or anyone else concerning a possible traffic violation.

The trial court concluded Abraham "was encountered by Sartain after being flagged down by a concerned citizen." We agree that Sartain's initial contact with Abraham was merely an encounter. The court of criminal appeals recently described such an encounter using familiar examples:

> Police officers are as free as any other citizen to knock on someone's door and ask to talk with them, to approach citizens on the street or in their cars and to ask for information or their cooperation. Police officers may be as aggressive as the pushy Fuller-brush man at the front door, the insistent panhandler on the street, or the grimacing street-corner car-window squeegee man. All of these social interactions may involve embarrassment and inconvenience, but they do not involve official coercion.

*State v. Garcia–Cantu*, 253 S.W.3d 236, 243 (Tex.Crim.App.2008). The court went on to say that each such encounter between citizens and police must be factually evaluated on its own terms to ensure there is no official coercion; it concluded "there are no per se rules." *Id.*

In this case, a private citizen told Sartain a person was passed out in a car in the middle of the roadway nearby. Sartain located Abraham's vehicle, approached and attempted to wake him, and made an initial contact when Abraham rolled down the car window. This was precisely the type of encounter any citizen might have initiated, out of concern for the safety of the driver of the vehicle, had the citizen come upon the vehicle in the daylight. It was reasonable for a concerned citizen to ask a police officer to check on the driver's safety at three o'clock in the morning. But the nature of the encounter certainly did not involve any official coercion. As we have pointed out, the vehicle was already stopped.

Only when Sartain smelled alcohol on Abraham's breath did he reach into the vehicle, turn the engine off, and remove the keys. Sartain then called authorities to have a Plano officer come to the scene. Sartain waited with Abraham—who remained in his vehicle—until Plano officer Quillin arrived and took over the investigation. Abraham argues Sartain's actions violated former article 14.03(g) of the code of criminal procedure. Act of May 27, 1985, 69th Leg., R.S., ch. 583, § 2 Tex. Gen. Laws 2203 (amended 2005) (current version at Tex.Code Crim. Proc. Ann. § 14.03(g) (Vernon Supp. 2008)). Article 14.03(g) governs both detentions and arrests conducted by a peace officer outside his jurisdiction. *See Brother v. State*, 166 S.W.3d 255, 260 (Tex.Crim.App.2005); *State v. Purdy*, 244 S.W.3d 591, 594 (Tex. App.-Dallas 2008, pet. ref'd) (provisions of

article 14.03 not limited to formal, custodial arrest; also apply when officer temporarily detains person based on reasonable suspicion). "An investigative detention is a confrontation of a citizen by law enforcement officers wherein the citizen yields to a display of authority and is temporarily detained for purposes of an investigation." *Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim.App.1995). The Fourth Amendment permits a temporary detention when the detaining officer has specific articulable facts which, taken together with rational inferences from those facts, lead the officer to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

Sartain had discovered Abraham alone, either asleep or passed out in the driver's seat of his car, with the engine running, just shy of the intersection of two roadways. It had taken Sartain several minutes to rouse Abraham, and when he did, he smelled alcohol on Abraham's breath. These specific articulable facts, combined with the rational inference that Abraham had been driving after drinking,[1] could certainly have led Sartain to conclude Abraham had been engaged in the offense of driving while intoxicated. *See id.* The applicable version of article 14.03(g) allowed an officer outside his jurisdiction to detain a person who had been driving while intoxicated. *See Brother*, 166 S.W.3d at 260.

We conclude Sartain's detention of Abraham, although outside his jurisdiction, did not violate article 14.03(g). The trial court correctly denied the motion to suppress. We overrule Abraham's first issue.

### SUFFICIENCY OF THE EVIDENCE

In his second issue, Abraham argues the evidence is legally and factually insufficient to support his conviction. Abraham was charged with "operat[ing] a motor vehicle in a public place while [he] was intoxicated by not having the normal use of his mental and physical faculties."[2] According to Abraham, there was insufficient evidence to establish he was driving the vehicle in question and that he was intoxicated while driving.

We apply well-known standards when reviewing challenges to the sufficiency of the evidence. In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences, any rational trier of fact could have found the defendant guilty of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Lane v. State*, 151 S.W.3d 188, 191–92 (Tex.Crim.App.2004). In a factual sufficiency review, we view all of the evidence in a neutral light and ask whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex.Crim. App.2007); *Watson v. State*, 204 S.W.3d 404, 415 (Tex.Crim.App.2006). Evidence is factually insufficient when the evidence supporting the conviction is so weak the verdict seems clearly wrong and manifestly unjust, or when the evidence supporting the conviction is outweighed by the great weight and preponderance of the contrary

---

**1.** This inference is discussed *infra* in the discussion of sufficiency of the evidence.

**2.** We note that although the penal code titles this offense "Driving While Intoxicated," a person commits the offense "if the person is intoxicated while *operating* a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.06(a) (Vernon 2003) (emphasis added).

evidence so as to render the verdict clearly wrong and manifestly unjust. *Roberts,* 220 S.W.3d at 524.

Abraham's specific argument is that neither testifying officer actually saw Abraham operate the vehicle.[3] This Court has concluded, under similar circumstances, that

the evidence is sufficient to show operation of a motor vehicle where the totality of the circumstances demonstrates that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use.

*Barton v. State,* 882 S.W.2d 456, 460 (Tex. App.-Dallas 1994, no pet.); *see also Freeman v. State,* 69 S.W.3d 374, 376 (Tex. App.-Dallas 2002, no pet.) ("We examine the totality of the circumstances to determine if appellant exerted personal effort in a manner that shows intentional use of the vehicle for the intended purpose."). Viewed in the light most favorable to the verdict, we conclude the circumstantial evidence indicates Abraham, while intoxicated, exerted personal effort upon his vehicle by causing the motor to be running, the lights to be on, and by shifting the gear to drive.

Abraham asserts, without authority, that the State must establish "a time of driving" to determine the relationship between his alleged driving and his intoxication. When asked by Quillin whether he had been drinking, Abraham told the officer he had drunk four beers in a bar in Dallas and was on his way home. Thus, the evidence demonstrates Abraham drove from a Dallas bar to Plano. Further, as the result of Abraham's effort, the vehicle remained stopped for a considerable amount of time in the center lane of an intersection of two public streets. The evidence shows he remained passed out in the vehicle at least as long as it took a passerby to report his presence to Sartain, for Sartain to find him, and for Sartain to rouse him. The only reasonable inference is that Abraham's driving and operation of his vehicle took place while he was intoxicated.

We conclude the evidence, together with reasonable inferences therefrom, is legally sufficient to show Abraham was operating his vehicle while intoxicated. Moreover, after viewing all the evidence as required in our factual sufficiency review, we conclude the proof of guilt is not so obviously weak as to undermine confidence in the verdict and is not greatly outweighed by contrary proof. The evidence is, therefore, factually sufficient to show Abraham was operating his vehicle while intoxicated. We overrule Abraham's second issue.

## MOTION TO DISMISS

 In his third issue, Abraham contends the trial court erroneously denied his Motion to Dismiss for Violation of Defendant's Right to a Speedy Trial. We review a speedy trial claim under the balancing test set out in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Kelly v. State,* 163 S.W.3d 722, 726 (Tex.Crim.App.2005). That test requires a weighing of factors including—but not necessarily limited to—the length of the delay, the reason for the delay, the defendant's assertion of his speedy-trial right, and the prejudice to the defendant resulting from the delay. *Barker,* 407 U.S. at 530, 92 S.Ct. 2182. No single factor is necessary or sufficient to establish a violation of the defendant's right to a speedy

---

**3.** Abraham has not challenged the evidence supporting the jury's finding that he was intoxicated at the time of his arrest. The evidence is overwhelming that he was intoxicated, and Abraham does not brief or argue that point. Instead, Abraham challenges only the sufficiency of the evidence to show that he operated the vehicle while he was intoxicated.

trial. *Id.* at 533, 92 S.Ct. 2182; *see also Shaw v. State,* 117 S.W.3d 883, 889 (Tex. Crim.App.2003). We review the trial court's ruling on a motion to dismiss for want of a speedy trial in light of the arguments, information, and evidence that was available to the trial court at the time it ruled. *See Dragoo v. State,* 96 S.W.3d 308, 313 (Tex.Crim.App.2003). We must affirm the trial court's ruling if it is supported by the record and is correct under the applicable law. *Shaw,* 117 S.W.3d at 889.

### Length of Delay

■ The first factor, the length of the delay, is measured from the time the defendant is arrested or formally accused; a delay approaching one year is presumed to be sufficient to trigger a speedy trial inquiry. *See id.* The record indicates Abraham was arrested on August 13, 2005, and his trial began on September 26, 2007. This period of approximately twenty-five months is sufficient to support further inquiry into Abraham's complaint and circumstances.

### Reasons for the Delay

■ In a speedy-trial inquiry, the State has the burden of justifying the delay. *Id.* at 891 n. 3. In this case, the State did not offer evidence of its own to explain the delay. It did elicit on cross-examination of Abraham that "a few times" when he had come to court he was told "someone wasn't able to show up," and he guessed one of the officers was not able to be there. Delay caused by a missing witness is valid and justifies the associated delay. *See Emery v. State,* 881 S.W.2d 702, 708 (Tex.Crim.App.1994).

The State acknowledges that the record contains no explanation concerning certain periods of delay that total approximately eighteen months.[4] In the absence of explanation for a delay, we will not presume either a deliberate attempt to prejudice the defense or a valid reason for the delay. These unexplained delays weigh against the State, but not heavily. *See Dragoo,* 96 S.W.3d at 314.

Abraham contends the primary causes of delay were (1) the State's failure to prepare findings of fact and conclusions of law in a timely manner after the motion to suppress, and (2) the trial court's failure to rule on those findings and conclusions in a timely manner. The record does contain Abraham's motion for continuance premised on the trial court's failure to issue the findings and conclusions. The State argues that Abraham himself is responsible for the period of the delay surrounding the suppression motion, explaining (1) Abraham did not even file the suppression motion until a full month after the original date set for a hearing on it, and (2) when the hearing was held, Abraham asked the court to delay its decision so he could file a memorandum of law. We conclude the portion of the delay surrounding Abraham's motion to suppress is a neutral factor.

Overall, we consider the reasons for the delay to weigh against the State, but not heavily.

4. The State places the following time periods within this category:

- August 13, 2005 (Abraham's arrest) through January 5, 2006 (Abraham's announcement), a period of approximately five months;
- August 21, 2006 (trial setting) through April 16, 2007 (trial setting), a period of approximately eight months; and
- April 19, 2007 (filing of Findings of Fact and Conclusions of Law on motion to suppress) through September 26, 2007 (actual trial date), a period of approximately five months.

### Defendant's Assertion of the Right

 Abraham first made his motion to dismiss on the day of trial. A defendant does not waive his right to a speedy trial by failing to assert it, but such a failure makes it difficult for the defendant to establish that he was actually denied a speedy trial. *See Dragoo,* 96 S.W.3d at 314. A defendant's failure to demand a speedy trial "indicates strongly" that he did not really want one and was not prejudiced by the lack of one. *Id.* Moreover, the longer the delay becomes, the more likely it would be that a defendant who really wanted a speedy trial would take some action to obtain one. *Id.* Thus, the longer the delay becomes, the more heavily the defendant's inaction weighs against him. *Id.*

 The Texas Court of Criminal Appeals has recently addressed the vehicle whereby a defendant urges his right. If a defendant files for a dismissal instead of a speedy trial, his claim will be weakened "because it shows a desire to have no trial instead of a speedy one." *Cantu v. State,* 253 S.W.3d 273, 283 (Tex.Crim.App.2008). Indeed, the court stated that a defendant who fails to seek a speedy trial before seeking dismissal of the charges must provide "cogent reasons" for doing so. *Id.* Our record is silent as to why Abraham did not seek a speedy trial before he sought dismissal on the very day trial was to begin.

We conclude that, in view of Abraham's unexplained delay of more than two years, this factor weighs heavily against finding a violation of the speedy-trial right.

### Prejudice to the Defendant

We assess this final factor in light of the interests the speedy-trial right was intended to protect: (1) preventing oppressive pretrial incarceration, (2) minimizing the defendant's anxiety and concern, and (3) limiting the possibility that the defendant's defense will be impaired. *Shaw,* 117 S.W.3d at 890. "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Id.* (quoting *Barker,* 407 U.S. at 532, 92 S.Ct. 2182). Indeed, the United State Supreme Court has concluded we must presume that excessive delay compromises the reliability of a trial in ways that neither party may be able to identify or prove. *Doggett v. United States,* 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). However, this presumption of prejudice is mitigated by the defendant's acquiescence in the delay. *Id.* at 658, 112 S.Ct. 2686.

The first interest is not at issue in this case: Abraham was released on bond the day after his arrest.

As to the second interest, Abraham testified he missed work on "several occasions," for which he was not paid. He also testified he had applied for a new job but was told "there's something still pending as far as [his] criminal record and they would have to wait and see what happens." The record is meager on each of these matters: we do not know how much work was missed at what cost to Abraham, and we do not know when Abraham applied for the new job so as to determine how much the delay might have harmed his chances for the position.[5] We conclude the record does not contain evidence that the delay

---

5. Unless the prospective employer's message was received by Abraham the day before trial was to begin (in which case there could be no real prejudice caused by delay), it does not appear that Abraham's concern with obtaining the new position moved him to seek a speedy trial.

caused him any unusual anxiety or concern beyond that normally associated with being charged with driving while intoxicated. *See Shaw*, 117 S.W.3d at 890 (appellant offered no evidence that delay caused him any anxiety or concern beyond level normally associated with being charged with felony sexual crime).

With respect to the third interest, Abraham has not argued on appeal that his defense was impaired in any way because of the delay. He has not disputed the State's assertion that he "did not know of any witness he had intended to call who could not come to trial because of the delay of trial." Thus, Abraham has not shown any specific prejudice to his defense.

As we have said, the law presumes the lengthy delay adversely affected Abraham's ability to defend himself in some manner, but this presumption is mitigated by his own longtime acquiescence in the delay. *See Doggett*, 505 U.S. at 658, 112 S.Ct. 2686. Significantly, Abraham's attorney requested the trial be reset during the very hearing at which he argued Abraham had been denied a speedy trial. Abraham's counsel made reference to his need to call witnesses on the motion.[6] In this Court, Abraham contends the trial court "ordered [him] to continue with his Motion without the presence of two important witnesses." But Abraham includes no citation to the record for this point, and we find no such order in the record. Abraham also complained and sought to reset the trial setting because the judge he wanted to hear the motion was not available to do so. These complaints serve to confirm Abraham's acquiescence in the delay before his trial.

Overall, we conclude the factor of prejudice to Abraham weighs heavily against finding a violation of his right to a speedy trial.

### Weighing Factors

The length of delay and reasons for the delay in getting to trial in this case weigh against the State. But Abraham's unexplained delay in asserting his right and his failure to demonstrate any serious prejudice weigh heavily against him. We conclude, on balance, the trial court correctly concluded there was no violation of Abraham's right to a speedy trial. *See, e.g., Dragoo*, 96 S.W.3d at 308 (where defendant demonstrated no serious prejudice by delay of three and one-half years between arrest and trial, and waited until just before trial to assert right to speedy trial, right to speedy trial was not violated). We overrule Abraham's third issue.

### CONCLUSION

We have decided each of Abraham's issues against him. We affirm the judgment of the trial court.

---

**6.** The witnesses referred to are the trial judge and prosecutor in the case at the time of the suppression hearing a year earlier. The record does not show any effort made by Abraham to bring those witnesses to his hearing on the motion to dismiss. His counsel stated only that he thought those two witnesses "would have to be subpoenaed" for him to have a fair hearing on the speedy-trial issue.