

# NUMBER 13-16-00526-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

BILLY RUSHING,                                                                          Appellant,

v.

THE STATE OF TEXAS,                                                                    Appellee.

### On appeal from the 347th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Contreras, and Benavides
### Memorandum Opinion by Justice Rodriguez

A jury found appellant Billy Rushing guilty of felony driving while intoxicated (DWI) with punishment enhanced as a repeat felony offender. *See* TEX. PENAL CODE ANN. § 49.04(a) (West, Westlaw through 2017 1st C.S.); *id.* § 12.42(a) (West, Westlaw through 2017 R.S.). The trial court sentenced Rushing to ten years imprisonment in the Institutional Division of the Texas Department of Criminal Justice. By one issue, Rushing

contends that the evidence was insufficient to sustain his conviction. We affirm as modified.

## I. BACKGROUND[1]

### A. Officer Timothy Frazier

At the guilt-innocence phase of the trial, Officer Timothy Frazier, a traffic supervisor with fourteen years' experience, all in the Patrol Division, testified that he responded to a traffic call at 11:21 p.m. on November 7, 2013. Officer Frazier identified Rushing as the person in the driver's seat of a vehicle that was stopped halfway into an intersection and on the wrong side of the road. Officer Frazier continued,

> The vehicle was on as I approached, and I could tell that the driver was passed out. He was asleep at the wheel. His head was down. His eyes were closed. . . . Then I kind of tried to wake him up eventually with my flashlight. He opened up his eyes, looked at me and realized I was a police officer. . . . The vehicle was running; engine was turned over . . . . All the lights were on.

Officer Frazier testified that no one else was in the vehicle and that Rushing was in the driver's seat when he arrived. According to Officer Frazier, when he approached the vehicle Rushing had a cold, opened bottle of beer "nestled" in his lap; Rushing informed him that he had five or six beers and that "he was just trying to get home." Officer Frazier stated that Rushing told him that "[i]t was his birthday, and then he just kept saying he was just trying to get home." Officer Frazier testified that after Rushing refused all three types of field sobriety tests because he "had too many beers" and "would fail the test[s],"

---

[1] As this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

he placed him under arrest.[2]   A dash-cam video of the incident in question was played for the jury, while Officer Frazier gave a running commentary.

The dash-cam video, which the trial court admitted into evidence without objection, reveals that Rushing told Officer Frazier six times that he was "trying to go home" from his birthday party.   And after Rushing asked what he did wrong and Officer Frazier told him that he was on the wrong side of the street, Rushing responded, "I was trying to turn."

On cross-examination, after watching a replay of the dash-cam video, Officer Frazier admitted that Rushing opened the door as he approached; Rushing suggested to the jury that this meant he could not have been asleep as Officer Frazier claimed earlier. However, Officer Frazier continued explaining that Rushing fell back to sleep immediately; in his experience, "intoxicated people—have the ability to go to sleep, kind of wake up a little bit, move and then go right back to sleep."   Finally, on cross-examination, after noting that the video showed that Rushing opened the car door and held out keys for Officer Frazier, Rushing asked, "How can the car be running if I gave you the keys?" Officer Frazier answered, "Then I was mistaken, sir. . . .   I do make mistakes."

On re-direct, Officer Frazier testified that Rushing's vehicle had to be driven to where it was found.   On re-cross, Frazier agreed that he never saw Rushing driving and that the vehicle was just sitting there.

## B.    Rushing

Rushing testified that his cousin, Adam Robinson, drove him to a party at 9:15 p.m., to celebrate Rushing's birthday.[3]   According to Rushing, he drank five beers at the

---

[2] The record shows that Rushing stipulated to two prior driving while intoxicated convictions.

[3] Adam Robinson was not available to testify because he had passed away.

party. He testified that around 11:00 p.m., taking his fifth beer with him, Rushing and Robinson left because Rushing had fallen asleep. Rushing testified that his cousin "was bringing him back [home] . . . driving [Rushing's] car." Rushing provided the following explanation for the location of his vehicle:

> He (cousin) said—because I was asleep. I ain't going to lie. I was asleep. He was trying to turn off Tarlton, over onto Port, making a right. He said the car just went dead and the wheel just stuck. You know how the wheel stuck sometimes. He said it was stuck. He pulled into the other lane. He tried to straighten it up and everything best he could. He couldn't. We decided to leave it there instead of trying to push it because there were too many cars coming. . . . He was in the military. He works on cars. He popped the hood to do something. Nothing worked.

According to Rushing, his cousin went to get a friend to push the car while he stayed with the car and went back to sleep. Rushing testified that he woke and slid over to the driver's seat when a lady in a white car pulled up next to him, that his car was not running when Officer Frazier arrived, and that he later got the keys out of his pocket and gave them to Officer Frazier. Acknowledging that the keys he gave Officer Frazier were his cousin's car keys, Rushing explained that his cousin "still had [Rushing's] keys."

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Courts of appeal review the sufficiency of evidence establishing the elements of a criminal offense for which the State has the burden of proof under the single sufficiency standard set out in *Jackson v. Virginia*. 443 U.S. 307, 319 (1979); *Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016). "[A] reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Whatley v. State*, 445

4

S.W.3d 159, 166 (Tex. Crim. App. 2014); *see Jackson*, 443 U.S. at 319; *Fernandez*, 479 S.W.3d at 837–38.

We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When the record of historical facts supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the prosecution, and we must defer to that resolution. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilt is warranted by the cumulative force of all incriminating evidence. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). In our sufficiency review, direct and circumstantial evidence are treated equally—that is, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). More specifically, a conviction for a DWI offense may be supported solely by circumstantial evidence, which is as probative as direct evidence. *See Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).

The reviewing court measures the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). A hypothetically correct jury charge is authorized by the indictment, accurately sets out the law, does not unnecessarily increase

5

the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense in question. *Id.*; *Malik v. State*, 953 S.W.2d 234, 239 (Tex. Crim. App. 1997) (en banc).

Section 49.04 of the Texas Penal Code provides that "[a] person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04. In this case, whether Rushing was operating the vehicle was a question of fact to be resolved by the fact-finder. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West, Westlaw through 2017 1st C.S.); *Brown v. State*, 122 S.W.3d 794, 797 (Tex. Crim. App. 2003).

The word "operating" is not defined in the penal code, but case law instructs that "'operate' is a common term that has not acquired a technical meaning and may be interpreted according to its common usage." *Kirsch v. State*, 357 S.W.3d 645, 650 (Tex. Crim. App. 2012). "Operate" means when "the totality of the circumstances . . . demonstrate[s] that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995) (en banc); *see Abraham v. State*, 330 S.W.3d 326, 331 (Tex. App.—Dallas 2009, pet. dism'd). This is a broad standard that does not require evidence that appellant actually endeavored to "cause the automobile to either move or not move" to operate it. *Denton*, 911 S.W.2d at 389.

### III. DISCUSSION

By his sole issue, Rushing contends that the evidence was insufficient to sustain the jury's verdict that he had operated the motor vehicle. *See* TEX. PENAL CODE ANN. § 49.04(a). Rushing concedes that he was intoxicated on the night in question; on

appeal, he challenges only the operation element of the offense. *See id.*; TEX. R. APP. P. 47.1.

## A. Totality of the Circumstances

First, Rushing claims that the totality of the circumstances demonstrates that he was not operating his vehicle because it "was not running, was in park, was on the wrong side of the street but was parked and not protruding as to be a safety concern." He asserts that "[t]his evidence along with [his] testimony that he was not driving that evening, if believed by the jury, would fail to show he operated this vehicle." Rushing concludes his argument by setting out that the circumstances of this case in total "demonstrate [he] took no action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *See Kirsch*, 357 S.W.3d at 650 (quoting *Denton*, 911 S.W.2d at 390). In other words, Rushing argues that the evidence shows that he was not operating the vehicle. *See id.* We disagree.

Officer Frazier's initial testimony was that the car was stopped halfway into the intersection and on the wrong side of the road with its lights on and the engine running; Rushing was alone in the vehicle that belonged to him, and he was in the driver's seat. Deferring to the jury to weigh the evidence and draw reasonable inferences from basic facts to ultimate facts, *see Hooper*, 214 S.W.3d at 13, the jury could have concluded that Rushing operated the vehicle based the cumulative force of this circumstantial evidence. *See Winfrey*, 393 S.W.3d at 768. This evidence alone was sufficient to establish Rushing's actions to affect the functioning of his vehicle in a manner that would enable its use—to establish Rushing operated the vehicle. *See Clayton*, 235 S.W.3d at 778; *see also Kuciemba*, 310 S.W.3d at 462.

7

Furthermore, as to Rushing's challenge that the evidence does not establish the engine was running, the jury could also have reasonably inferred that Officer Frazier heard the engine running as he approached the car, before Rushing arguably turned off the engine and handed the officer keys to his cousin's vehicle, not his own.   *See Whatley*, 445 S.W.3d at 166.   We must presume that the jury resolved any conflicts in favor of the State and will defer to that resolution.[4]   *See Padilla*, 326 S.W.3d at 200.

## B.    Inculpatory Statements

Second, Rushing asserts that he never inculpated himself at the scene or during trial and, instead, maintained at all times "that he had not driven the car on the way home from his birthday outing."   But this argument is without merit.

The dash-cam video that was shown to the jury established that Rushing explained to Officer Frazier on numerous occasions that he was "just trying to get home" and on one occasion that he was attempting a left turn when he ended up going the wrong way in the intersection.   And we further note that Rushing made no mention of his cousin, of another driver, or of car trouble on the dash-cam video.   This evidence conflicts with Rushing's trial testimony that his cousin operated the vehicle.   Again, we must presume that the jury fairly resolved any conflicts in favor of the State and defer to that resolution. *See Padilla*, 326 S.W.3d at 200; *see also Hooper*, 214 S.W.3d at 13; *Newberry v. State*, No. 03-14-00560-CR, 2016 WL 4091296, at *2 (Tex. App.—Austin 2016, no pet.) (mem. op., not designated for publication) (concluding Newberry had been operating the vehicle

---

[4] We also note that although Officer Frazier acknowledged that he made mistakes, the jury could have determined that, by this testimony, Officer Frazier was mistaken about when the engine was turned off and not about whether the engine was running.   *See Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

based on circumstantial evidence that "Newberry was found in the driver's seat of the vehicle and that the keys to the vehicle were found in Newberry's lap," that when the officers approached the vehicle Newberry was its only occupant and "'Juan' was nowhere to be found," and that Newberry had informed an officer that he was "'coming from work' and 'headed home'").

## C.    Summary

Considering all evidence and reasonable inferences from that evidence in the light most favorable to the verdict, we conclude that a rational fact finder could have found beyond a reasonable doubt that Rushing operated the vehicle.    *See Whatley*, 445 S.W.3d at 166; *Denton*, 911 S.W.2d at 390; *see also Newberry*, 2016 WL 4091296, at *2. We overrule Rushing's issue.

### IV.    REFORMATION OF JUDGMENT

The State brings to our attention that the judgment mistakenly recites that Rushing pleaded guilty to the offense.    The record shows Rushing pleaded not guilty to the charge in the indictment.    Because the necessary information is available in the record, we modify the trial court's September 16, 2016 judgment, sua sponte, to show Rushing entered a not guilty plea.    *See* TEX. R. APP. P. 43.2(b) (setting out that a judgment may be modified and affirmed as modified on appeal); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (en banc) (same); *Herrera v. State*, 527 S.W.3d 675, 680 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) ("Where, as here, the record provides the necessary information to correct inaccuracies in a trial court's judgment, we have the authority to reform the judgment sua sponte to speak the truth."); *see also Schuff v. State*,

No. 13-08-00023-CR, 2009 WL 3321023, at \*7 (Tex. App.—Corpus Christi October 15, 2009, pet. dismissed, untimely filed) (mem. op. not designated for publication) (same).

## V. CONCLUSION

We affirm the trial court's judgment as modified.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
24th day of May, 2018.