

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00114-CR

CHRISTOPHER WILKINS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 1
Gregg County, Texas
Trial Court No. 2017-2317

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

In a trial before the court, Christopher Wilkins was convicted of driving while intoxicated (DWI). At trial, Wilkins filed a motion to suppress the State's evidence on the basis that it was obtained while he was being illegally detained in violation of the Fourth Amendment. The trial court denied Wilkins' motion, found him guilty, and sentenced him to serve 180 days in the county jail. It also imposed a fine in the amount of $600.00. The trial court then suspended imposition of Wilkins' sentence and placed him on community supervision for a period of fifteen months.

On appeal, Wilkins argues that the trial court erred in denying his motion to suppress. After reviewing the record and applicable law, we find no error in the trial court's ruling. We affirm the trial court's judgment.

## I. Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts that turn on credibility and demeanor, while reviewing de novo other application-of-law-to-fact questions. *See Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Appellate courts should also afford nearly total deference to trial court rulings on application-of-law-to-fact questions, also known as mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Appellate courts may review mixed questions of law and fact not falling within this category on a de novo

basis. *Id*. We must affirm the decision if it is correct on any theory of law that finds support in the record. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

## II.  Facts Leading to Wilkins' Arrest

Concerned citizen Jose Garados called 9-1-1 in the early morning hours of August 19, 2017.  Garados described a white Toyota Tacoma truck swerving across lanes and exhibiting other movements suggesting that the driver was intoxicated.  Deputy Jarrod Alexander was dispatched to investigate.

On arrival at about 2:20 a.m., Alexander found a white Toyota Tacoma parked in a local business' parking lot.  The Tacoma's engine was running, and it was in gear.  Alexander found Wilkins asleep at the wheel, with his foot on the brake.  Speaking to Wilkins, Alexander smelled alcohol coming from the driver's person.

After several tries, Alexander was able to rouse Wilkins.  Wilkins' opened his eyes and removed his foot from the brake causing the truck to roll forward several feet.  Wilkins complied with Alexander's shouts to stop the truck.  Wilkins subsequently failed field sobriety tests and exhibited six indicia of intoxication when administered a horizontal gaze nystagmus test.  Alexander arrested Wilkins for DWI, and he was later convicted of that offense.

## III.  Analysis

### A.  Alexander's Initial Approach Was a Consensual Encounter

Contrary to Wilkins' description of events in the parking lot, Deputy Alexander did not detain Wilkins when he first approached his vehicle.  Rather, Alexander approached Wilkins and engaged in an encounter.  "[A] seizure does not occur simply because a police officer approaches

3

an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). "Consensual police-citizen encounters do not implicate Fourth Amendment protections. Law enforcement is free to stop and question a fellow citizen; no justification is required for an officer to request information from a citizen. And citizens may, at will, terminate consensual encounters." *State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011) (citations omitted) (footnotes omitted). Thus, "[p]olice officers may approach citizens and talk with them without *any* suspicion as long as a stop is not effected."[1] *Taylor v. State*, 820 S.W.2d 392, 395 (Tex. App.—Houston [14th Dist.] 1991, no pet.)

Wilkins argues that Alexander had no reason to approach his vehicle. Specifically, he argues that his white Toyota Tacoma did not match the description given by the concerned driver because it did not have a dent in its tailgate. Yet, Alexander did not need a reason to approach Wilkins' vehicle. As noted, an officer may approach a person on the street, in a parking lot, or any other public place. Wilkins was clearly in a public place when Alexander arrived. Thus, Alexander was permitted to approach Wilkins' vehicle and engage in an encounter with him regardless of whether his vehicle fit the exact description given by the 9-1-1 caller.

---

[1]For example, in *Jackson v. State*, the court of appeals held that a request by officers at an airport to search a woman's bag was an encounter, not a detention. *Jackson v. State*, 77 S.W.3d 921, 924–28 (Tex. App.—Houston [14th Dist.] 2002, no pet.). In *Citizen v. State*, the court of appeals held that, when officers approached the front porch of a residence and asked a man to stop as he turned to enter the house, a police encounter occurred, not a detention. *Citizen v. State*, 39 S.W.3d 367, 371 (Tex. App.—Houston [1st Dist.] 2001, no pet.). And, in *State v. Hernandez*, we held that no Fourth Amendment violation occurred where a bus passenger, Hernandez, was questioned by police and then acquiesced to a search of his bag, because it was an encounter rather than a detention. *State v. Hernandez*, 64 S.W.3d 548, 551–52 (Tex. App.—Texarkana 2001, no pet.).

4

**B.     By the Time the Vehicle Rolled Forward, Alexander Had Developed Reasonable Suspicion to Detain Wilkins**

Wilkins also claims that, because Alexander stopped him when he attempted to terminate the initial encounter, he was being detained. Wilkins points to the fact that his truck rolled forward several feet as support for his position that he was attempting to terminate the encounter.

It is true that during a police encounter, the approached citizen has the right to terminate the encounter.[2] Nevertheless, the record does not support Wilkins' claim that he attempted to terminate the encounter. Rather, it suggests an involuntary action resulting from Wilkins' intoxication. To begin with, Alexander's body camera shows Wilkins asleep behind the wheel with his arm leaning over the driver's door window. Alexander patted Wilkins' arm several times and commanded him to wake. Alexander then jostled Wilkins' shoulder. It took Alexander thirty-one seconds to arouse Wilkins. By that point, Alexander had advised dispatch that the vehicle was running and in gear and that the driver was passed out.

After Alexander aroused Wilkins, he opened his eyes and the Tacoma rolled forward a few feet. Wilkins immediately acceded to Alexander's commands to stop, but he was unable to comply with the deputy's instruction to put the vehicle in park. Instead, Alexander had to put the truck into park himself. By that point, Wilkins had only raised his hands, slightly, and had not spoken. Consequently, the record does not support Wilkins' claim that he attempted to terminate the interview.

---

[2]*See State v. Woodward*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011) (holding that, "[i]f it was an option to ignore the [officer's] request . . . , then a Fourth Amendment seizure has not occurred.") (citing *Brendlin v. California*, 551 U.S. 249, 255 (2007)). It follows, then, that, if the encounter is not a seizure, the citizen has the "option to ignore the [officer's] request." *Id*.

In addition, even if we interpreted the evidence as supporting Wilkins' claim that he tried to terminate the encounter—so that Alexander's action in stopping him converted the encounter into a detention—the trial court found that, by the time the vehicle moved, Alexander had observed the following information: (1) that Wilkins was the sole occupant of the vehicle; (2) that the engine of Wilkins' vehicle was running; (3) that the windows of Wilkins' vehicle were rolled down; (4) that Wilkins was partially slumped out of the window of his vehicle; (5) that the odor of alcohol was coming from Wilkins and his vehicle; (6) that Wilkins was passed out; and (7) that Wilkins' vehicle was in gear. In a case with facts remarkably similar to the present case, the Dallas Court of Appeals found that such evidence constituted reasonable suspicion to detain the driver. *Abraham v. State*, 330 S.W.3d 326, 330 (Tex. App.—Dallas 2009, pet. dism'd).[3] Therefore, even if Wilkins were attempting to terminate the encounter and Alexander's actions in stopping Wilkins constituted a detention, Alexander had sufficient reasonable suspicion to detain Wilkins at that point.

---

[3]In *Abraham*, the defendant was found "alone, either asleep or passed out in the driver's seat of his car, with the engine running, just shy of the intersection of two roadways," and it took the responding officer "several minutes to rouse" him. *Abraham*, 330 S.W.3d at 330. While the court of appeals agreed with the trial court that the officer's approach was initially an encounter, it also held that the officer acquired sufficient facts to justify detaining the driver after the officer spent "several minutes to rouse" him, smelled alcohol on him, and reached into the vehicle to turn off its ignition. *Id*.

6

## IV.     Conclusion

Consequently, we find no error in the trial court's denial of Wilkins' motion to suppress evidence.

We affirm the court's judgment.

Ralph K. Burgess
Justice

Date Submitted:     December 18, 2018
Date Decided:      January 24, 2019

Do Not Publish

7