**Affirmed and Majority and Dissenting Opinions filed May 10, 2022.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-20-00751-CR

**THE STATE OF TEXAS, Appellant**

**V.**

**JENNIFER AILEENE ESPINOSA, Appellee**

**On Appeal from the County Criminal Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 2274357**

## M A J O R I T Y   O P I N I O N

The State of Texas appeals the trial court's order granting appellee Jennifer Aileene Espinosa's motion to suppress. Appellee was charged with driving while intoxicated ("DWI") and moved to suppress "all evidence seized and obtained" as a result of her "illegal detention, search[,] and seizure." In a single issue, the State asserts that the trial court erred in granting appellee's motion to suppress. We affirm.

## I.   BACKGROUND

At around 3:15 p.m. in August of 2019, Ashley Fajkus and her cousin drove past a stopped line of cars waiting in the far-right lane of a public roadway for after school pick-up at an elementary school. All the cars were at a standstill. Fajkus saw appellee sitting in the driver's seat of her car in the waiting line but noticed appellee's neck appeared to be at an odd angle. Concerned that appellee might be experiencing a medical emergency, Fajkus asked her cousin to stop. The two approached appellee's vehicle. Appellee was alone in the car, which was in park with the engine running.[1] Appellee appeared to be sleeping. Fajkus tried to open the door, but it was locked and the windows were up. Fajkus began pounding on the car's door and window. At this point, another driver waiting in the pick-up line called 911. Appellee awoke and opened her door. Fajkus could smell alcohol, and noticed appellee's car was in park. Though appellee was initially unresponsive, she spoke after a minute or two but was very difficult to understand. Appellee got out of the car and asked Fajkus to drive her home.

An elementary school teacher, Tasha Luce, approached and told appellee that 911 had been called and the police were on the way. According to Fajkus, when appellee learned that the police had been called, she went from "lethargic" to "kind of panicky a little bit" and started walking toward her car. Fajkus removed the keys from the vehicle. At that point, the vehicles in the pick-up line had begun moving and were driving around appellee's car to make the turn to proceed into the line. When Luce approached appellee, appellee was already outside her vehicle, and Luce could not say how long she had been in the pick-up line. With appellee's permission,

---

[1] Though Fajkus noticed that the engine was on, she could not say how long appellee had been in her car at that location.

Luce drove the vehicle to a nearby parking lot while appellee rode in the passenger seat. After Luce moved appellee's car, she kept the car keys. Luce confirmed that she did not see appellee inside her vehicle. Luce testified, however, that the pick-up line generally starts accumulating around 3:00 p.m. and that appellee's car was about the fifth car in line.

A fire truck arrived about thirty minutes after Fajkus first saw appellee. Fire department personnel checked appellee for medical issues and then waited for the police. Ten minutes later, Houston Police Department ("HPD") Officer Richard Brasuell arrived. Officer Brasuell is certified in standardized field sobriety testing and has some training and experience with evaluating intoxicated drivers. Officer Brasuell spoke to Fajkus, her cousin, Luce, a firefighter, and appellee.[2]

Fajkus told Officer Brasuell that she saw appellee behind the wheel of her parked vehicle stopped in the non-moving school pick-up line of traffic, with keys in the ignition and the engine running. Fajkus also told the officer that appellee "smelled like a bar" and "couldn't walk a straight line." One of the firefighters also told the officer that appellee smelled of alcohol. Four empty wine bottles were removed from appellee's car. Luce told Officer Brasuell that appellee said she was going to a nearby middle school, possibly to pick up her son. However, Luce also acknowledged that she did not see appellant actually drive her car or know when appellant parked at that location.

Officer Brasuell approached appellee. He observed that she had slurred speech, was disoriented, was confused about where she lived, was unsteady on her feet, had "glossy" red eyes, and had a strong odor of alcohol emanating from her person. The officer acknowledged that no one had seen appellee driving her vehicle

---

[2] Officer Brasuell's body camera was activated, and the audio-video recording was admitted during the suppression hearing.

but explained that appellee told him that she was coming from her house and was on her way to pick up her son.[3] Appellee refused standardized field sobriety testing, and Officer Brasuell arrested her for suspicion of DWI. It is undisputed that Officer Brasuell arrested appellee without a warrant.

Appellee filed a pretrial motion to suppress, claiming her warrantless arrest was unsupported by probable cause because neither the arresting officer nor any witness saw her drive or operate her vehicle. The court held a suppression hearing, during which three witnesses, including the arresting officer, testified about the events leading to appellee's arrest.

After hearing the evidence, the trial court granted appellee's motion to suppress all evidence, concluding that appellee was arrested without probable cause because the State failed to establish that appellee operated a motor vehicle while intoxicated as required for the offense. The court signed written findings of fact and conclusions of law. Among other findings, the court determined that no one saw appellee operating her vehicle and that no witness knew when appellee arrived in the pick-up line. The court found all witnesses truthful and credible.

After the suppression hearing, the trial court made findings of fact, including:

4. Fajkus had no medical training other than some training in high school where she was part of a group of students that trained with the doctors and nurses at Kingwood Medical Center.

. . .

8. Fajkus testified the defendant was not driving or doing anything to operate the vehicle.

9. Fajkus testified that she had no idea how long the Defendant had been at the school pickup line.

---

[3] On the body camera video, appellee can be heard telling Officer Brasuell that she was going to work.

10. Fajkus told officer Brasuell that she had not seen the Defendant driving that day.

. . .

15. Luce testified that the Defendant was not driving the vehicle at the time she approached, and was not sure how long the Defendant had been in the school pickup line.

16. Luce stated that Defendant was polite when she approached the scene. When Luce offered to move the car for the Defendant, she said sure and got into the passenger seat. Luce then drove the defendant in her car over to the nearby daycare.

. . .

23. When [Officer Brasuell] approached the scene, he observed the Defendant sitting outside her vehicle.

24. Officer Brasuell spoke with Fajkus and asked whether she saw the defendant driving. Fajkus responded that she did not see the Defendant driving the vehicle.

25. Officer Brasuell testified that he did not see the Defendant driving her vehicle.

26. Officer Brasuell further testified, that after talking to all the witnesses on the scene, no one saw the Defendant operating her vehicle.

27. On cross examination, Officer Brasuell agreed that on exhibit one, Luce stated several times, "I just came up after they had already taken the keys."

5

28. Officer Brasuell testified he had no idea when the Defendant arrived at the school pickup line. He agreed that the Defendant could've arrived in the line at 10 AM or even earlier.

. . .

32. He further testified that he had no idea when these wine bottles were consumed.

33. Officer Brasuell further agreed that it is possible that the Defendant could've been at the school pickup line the night before.

34. The court finds the witnesses Fajkus, Luce, and Officer Brasuell's testimony to be truthful and credible in their testimony in this court.

The trial court also made the following conclusions of law:

1. A Defendant "operates" a motor vehicle when the totality of the circumstances demonstrates that the defendant took action to affect the functioning of a vehicle in a manner that would enable the vehicle's use. *Tex. Dep't of Pub. Safety v. Allocca*, 301 S.W.3d 364, 368 (Tex. App.—Austin 2009, pet. denied) (citing *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)).

2. Although a Defendant need not move a vehicle in order to "operate" a vehicle, there must be "at least one additional factor, other than the driver being asleep with the engine running, that indicated the driver had attempted or intended to drive the vehicle." *Id.*

3. Evidence is insufficient to support a conviction for driving while intoxicated if there is no other evidence to show that the Defendant was driving the vehicle or that she was intoxicated at the time she was driving. *Coleman v. State*, 704 S.W.2d 511, 512 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd). This is true even if there is testimony that indicates a Defendant is intoxicated when officers arrive at the scene. *Id.*

6

4.    There was no "action to affect the functioning of his vehicle in a manner that would enable the vehicle's use" when a Defendant was found "sleeping in the car with the front seat reclined, the car in park, the lights off, and the engine running solely for the purpose of air conditioning, while parked in a parking lot behind his place of employment." *Allocca*, 301 S.W.3d at 369.

5.    The Court concludes there was insufficient probable cause to arrest the Defendant based on the State's failure to establish the Defendant "operated" a motor vehicle as required for the offense of driving while intoxicated.

The State timely appealed.

## II.    ANALYSIS

In its sole appellate issue, the State asserts that the trial court erred in granting appellee's motion to suppress. The State contends that:

[b]ecause the appellee was seen in the driver's seat of a car on a public roadway, in a moving lane of traffic, with the engine on, yet asleep at the wheel, and because she stated she was driving somewhere (either to work or to get her son), all in addition to signs the appellee was intoxicated, Officer Brasuell had probable cause to arrest the appellee for driving while intoxicated[.]

## A.    STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *See Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). At a motion to suppress hearing, the trial court is the sole trier of fact and judge of credibility of witnesses and the weight to be given to their testimony. *See id.* Therefore, we afford almost complete deference to the trial court in determining historical facts. *See id.*; *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Scott v. State*, 572 S.W.3d 755, 760 (Tex. App.—Houston [14th Dist.] 2019, no pet.). A trial court's ruling will be sustained if it is reasonably supported by the record and correct under any theory of law applicable to the case.

7

*Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003). However, we review de novo mixed questions of law and fact that do not rely on an evaluation of credibility and demeanor. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Laney*, 117 S.W.3d at 857. Determinations of probable cause are reviewed de novo. *See State v. Sheppard*, 271 S.W.3d 281, 287–88 (Tex. Crim. App. 2008); *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997).

When the trial judge makes express findings of fact, as it did in this case, we view the evidence in the light most favorable to his ruling and determine whether the evidence supports these factual findings. *Valtierra*, 310 S.W.3d at 447.

## B.    APPLICABLE LAW

"An officer can make a warrantless arrest when (1) there is probable cause to believe an offense has been or is being committed, and (2) the arrest falls within one of the statutory exceptions to the warrant requirement contained in articles 14.01 through 14.04 of the Texas Code of Criminal Procedure." *Chilman v. State*, 22 S.W.3d 50, 56 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). The State relied on article 14.01(b), which permits a peace officer to "arrest an offender without a warrant for any offense committed in his presence or within his view." Tex. Code Crim. Proc. art. 14.01(b). At the suppression hearing, appellee argued that the evidence was insufficient to support probable cause because the State failed to prove one specific element of the offense: operation of the vehicle. As the remaining elements were unchallenged, the State had the burden to show that there was sufficient evidence of operation. *See White v. State*, 549 S.W.3d 146, 155-56 (Tex. Crim. App. 2018). This is a legal issue that we review de novo. *See State v. Sheppard*, 271 S.W.3d 281, 287-88 (Tex. Crim. App. 2008).

Probable cause for a warrantless arrest under article 14.01(b) exists when "at the moment of arrest, the facts and circumstances within the officer's knowledge and

8

of which the officer had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the arrested person had committed or was committing an offense." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009); *Chilman*, 22 S.W.3d at 56; *Hillsman v. State*, 999 S.W.2d 157, 161 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *see State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011). "Probable cause requires an evaluation of probabilities, and probabilities 'are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). The test for probable cause is objective, *see Amador*, 275 S.W.3d at 878, and must be based on specific, articulable facts rather than the officer's mere opinion. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). Probable cause requires a degree of evidence that is more than bare suspicion but less than that which would justify conviction or meet the preponderance of the evidence standard. *See Illinois v. Gates*, 462 U.S. 213, 235 (1983) ("In other words, probable cause requires 'only the probability, and not a prima facie showing, of criminal activity.'"); *Baldwin v. State*, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009) ("Probable cause is a relatively high level of suspicion, though it falls far short of a preponderance of the evidence standard."); *Amador*, 275 S.W.3d at 878. As the reviewing court, we consider the totality of the circumstances when determining whether the facts were sufficient to give the officer probable cause to arrest the defendant. *Chilman*, 22 S.W.3d at 56.

To establish that appellant committed the offense of DWI, the State is required to prove that appellant was "intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04(a). The term "operate" is not defined in the penal code; however, case law provides that, under a sufficiency review, a person

9

operates a vehicle if the totality of the circumstances indicates that the person took action to affect the functioning of a vehicle in a manner that would enable the vehicle's use or exerted personal effort to cause the vehicle to function. *Maciel v. State*, 631 S.W.3d 720, 724 (Tex. Crim. App. 2021) (citing *Kirsch v. State*, 357 S.W.3d 645, 652 (Tex. Crim. App. 2012); *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)).

For the evidence to be sufficient to support a conviction for DWI, a "temporal link" must exist between the defendant's intoxication and his driving. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). This temporal link may be established by circumstantial evidence. *Id.* (noting that circumstantial evidence is as probative as direct evidence in establishing guilt); *Kinnett v. State*, 623 S.W.3d 876, 897–98 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd).

## C.    APPLICATION

The State argues that Officer Brasuell had probable cause to believe that appellee had operated her vehicle while intoxicated. We disagree. The circumstantial evidence was insufficient to establish a temporal link between appellee's intoxication and her driving. *See Kuciemba*, 310 S.W.3d at 462; *Kinnett*, 623 S.W.3d at 897–98. No one saw appellee drive her car, and there was no evidence of appellee's intoxication at the time she allegedly "operated" the car—as logically there could not be given that no witness could state when appellee drove the car.

There was no testimony adduced as to when appellee arrived at the location where she was spotted by Fajkus. Further, there was no evidence that appellee intended to drive her car; to the contrary, Fajkus, the woman who testified she initially made contact with appellee, testified that appellee asked Fajkus to drive her home. Luce then drove the car to a parking lot after obtaining appellees' permission to do so, indicating an intention of appellee not to operate her vehicle.

10

The State avers that numerous Texas courts, including ours, have found probable cause to arrest for DWI under the totality of the circumstances standard despite the fact that an officer did not see the accused operating a motor vehicle. *See*, *e.g.*, *Oliva v. State*, 525 S.W.3d 286, 296 (Tex. App.—Houston [14th Dist.] 2017), *rev'd on other grounds*, 548 S.W.3d 518 (Tex. Crim. App. 2018); *Abraham v. State*, 330 S.W.3d 326, 330–31 (Tex. App.—Dallas 2009, pet. dism'd); *Chilman*, 22 S.W.3d at 56; *State v. Parson*, 988 S.W.2d 264, 267–68 (Tex. App.—San Antonio 1998, no pet.); *Elliott v. State*, 908 S.W.2d 590, 591–92 (Tex. App.—Austin 1995, pet. ref'd). However, the present case is distinguishable from the authority relied on by the State.

The facts in each case cited by appellant include evidence sufficient to support a conviction or arrest for DWI. In *Abraham*, 330 S.W.3d at 330–31, the defendant appealed his conviction for the offense of driving while intoxicated, averring that the evidence was legally and factually insufficient to support the jury's verdict. There was evidence adduced of the length of time the defendant was spotted in his vehicle, his car was in gear, indicating an intention to drive, the defendant admitted to drinking four beers, and he failed three sobriety tests. *Id.* The State's reliance on *Abraham* is misplaced.

In *Hearne v. State*, 80 S.W.3d 677, 680 (Tex. App.—Houston [1st Dist.] 2002, no pet.), the court concluded there was sufficient evidence to support defendant's conviction for DWI based on the following facts: (1) defendant's car was parked in a moving lane of traffic; (2) the engine was running; (3) the defendant was in the driver's seat; (4) the vehicle was registered to defendant; (5) no other person that could have driven the vehicle was nearby; and (6) although there was no direct evidence of when appellant became intoxicated, the defendant stipulated that the "events in this case occurred while I was legally intoxicated." *Id.*

11

In *Murray v. State*, 457 S.W.3d 446, 449 (Tex. Crim. App. 2015), the defendant was convicted by a jury of the offense of driving while intoxicated. The court of appeals reversed and rendered. The State filed a petition for discretionary review, which was granted. The high court found that there was legally sufficient evidence to support the defendant's conviction for DWI despite the fact that there was no specific evidence as to when the defendant became intoxicated because the defendant failed all of the standard field sobriety tests; the defendant admitted he had been drinking; he was in the driver's seat with the vehicle running and was the only person in the vehicle; there was no one else was in the vicinity of the vehicle; and the defendant gave the officer a $100 bill and business cards instead of his identification from his wallet. *See id.* The court concluded that "a factfinder could have reasonably inferred that Appellant consumed alcoholic beverages to the point of intoxication somewhere other than where he was found." In *Chilman*, 22 S.W.3d at 56, the circumstantial evidence substantiated defendant's operation of his vehicle —an officer observed a red car parked in front of a campus barricade at 2:00 a.m. which had not been there when he passed by that location twenty minutes before, and the defendant demanded to know why the officer had stopped him, which indicates that defendant had been driving. *See Chilman*, 22 S.W.3d at 56. In contrast, in the present case, there is no evidence of intoxication, no admission by appellee as to any consumption of alcohol, and no evidence of when her vehicle was operated.

*Elliott*, 908 S.W.2d at 592, involved appellant's vehicle striking another pickup truck, causing an accident. At the scene, the investigating officer administered field sobriety tests, which appellant failed. Because the offense was not committed in the officer's presence or view, *see* Tex. Code Crim. Proc. Ann. art. 14.01(b), the court of appeals sustained the first point of error, concluding the officer could not arrest appellant for DWI. *Elliott,* 908 S.W.2d at 592. However, the court

of appeals concluded the arrest was not unlawful, because the officer could arrest the defendant for public intoxication based on his probable cause to believe the appellant posed a danger to himself and others. *See id.*

In *Parson*, 988 S.W.2d at 267–68, the finding of probable cause was based on these facts: (1) the accused (a) was connected to the accident scene, (b) was standing in the front yard only five to ten minutes from the scene, (c) had damage on a truck adjacent to him, (d) had told a friend that he had hit something on the way home, (e) seemed intoxicated and had a beer next to him, (f) became upset when officers told him people had been injured in a hit and run accident nearby; and (2) the vehicle involved in the accident was a truck. Unlike in *Parson*, there is nothing linking appellee to a vehicle that had been recently operated.

And lastly, in *Oliva*, 525 S.W.3d at 296, our court cited approvingly to both *Murray* and *Hearne* and found that there was sufficient evidence to support a conviction for operating a vehicle while intoxicated based on these facts: (1) defendant's vehicle was parked in a moving lane of traffic; (2) the key was in the ignition; (3) the car was running; (4) defendant was in the driver's seat; (5) no other person was in the car; (6) no evidence suggested that another person drove the car; and (7) breathalyzer results indicated—and the defendant did not contest—that he was intoxicated when the arresting officer found him. In the present case, there was no admission or evidence of intoxication while operating a vehicle.

In summary, unlike the authority relied upon by appellant, there was insufficient evidence to establish a temporal link between appellant's alleged intoxication and her operation of her vehicle. *See Kuciemba*, 310 S.W.3d at 462. Appellee did not admit to drinking, there were no positive breathalyzer results or failed field sobriety tests to suggest if, when, and how much, if any, alcohol was consumed, none of the witnesses knew how long appellee's vehicle was in the

13

location where she was observed, no one saw appellee drive or operate her vehicle, and the testimony indicates appellee did not express an intent to drive or operate her vehicle.

Considering the totality of the circumstances, we conclude that the facts presented are insufficient for a prudent person to believe that appellee had been driving while intoxicated, and thus the officer did not have probable cause to arrest her. Accordingly, the trial court did not err in granting appellee's motion to suppress. We overrule the State's sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.


/s/ Margaret "Meg" Poissant
   Justice


Panel consists of Justices Jewell, Bourliot, and Poissant. (J. Jewell, dissenting)
Publish — Tex. R. App. P. 47.2(b).

14