

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0276-22

**THE STATE OF TEXAS**

**v.**

**JENNIFER AILEENE ESPINOSA, Appellee**

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FOURTEENTH COURT OF APPEALS
HARRIS COUNTY**

HERVEY, J., delivered the unanimous opinion of the Court.

## O P I N I O N

This is a probable cause case. Jennifer Aileen Espinosa, Appellee, was found in her parked vehicle in a school pickup line at an elementary school just before school was dismissed. The engine was running, and she was asleep at the wheel. It was later discovered that she was intoxicated. Appellee told the investigating officer that she had not been drinking and was on her way to work, but told an eyewitness that she was on her way to a nearby middle school. The investigating officer arrested Appellee for DWI.

Appellee filed a motion to suppress, arguing that the officer did not have probable cause. The trial court granted the motion, and the court of appeals affirmed the ruling of the trial court. We granted review and will reverse the judgment of the court of appeals, vacate the ruling of the trial court, and remand the case to the trial court for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

On August 20, 2019, at about 3:15 p.m., Ashley Fajkus and her cousin were driving past Lakeshore Elementary School. School was about to be dismissed, and a line of bumper-to-bumper vehicles to pick up children had begun to form in the right-hand lane of the road. Fajkus testified that she and her cousin were driving past the line, when she noticed the head of a person in one of the vehicles was at an odd angle. She thought that the person might have been experiencing a medical emergency and asked her cousin to stop the vehicle so she could check on the driver.

Fajkus found Appellee asleep in the driver's seat. The vehicle's engine was running, and the transmission was in park. Fajkus banged on the driver's-side door and window (the door was locked and the windows rolled up), but she could not wake Appellee. Someone from another vehicle heard the commotion, exited her vehicle, and called 911, and according to Fajkus, "as soon as 911 was dialed, [Appellee] woke up and she opened her door. And I will say that when she opened and unlocked the door, you could smell alcohol on her breath." After Appellee exited the vehicle, it took a minute or two for Appellee to speak intelligibly, and when she did, it was still difficult to understand her. Fajkus understood Appellee to be asking for a ride home. While the

incident was unfolding between Appellee and Fajkus, a teacher (Tasha Luce), who was escorting children across a busy nearby intersection, saw Appellee's vehicle blocking the line, and she went to help. She ended up driving Appellee's vehicle to a nearby daycare parking lot. Fajkus estimated that a fire truck arrived about 30 minutes after she first saw Appellee in her vehicle and that the police arrived about 10 minutes later. She did not know how long Appellee's vehicle had been parked where it was, and she said that she never saw Appellee "operate" her vehicle.

Luce testified that she escorted the "walkers" once the children were dismissed. According to her, the pickup line usually began to form at about 3:00 p.m., but that year, the line began to form before 3:00 p.m. and filled up fast.[1] Luce said that school dismissed at 3:05 p.m., and the "walkers" were released before the "riders" (children who were being picked up). She said that the "riders" pickups began at about 3:15 p.m. When Luce was escorting "walkers" across the busy intersection, she saw two people behind Appellee's vehicle, which was fourth or fifth in the pickup line. Luce said that she approached them because traffic was backing up. She also said that Appellee told her that she was headed to a middle school. Luce never saw Appellee "operate" her vehicle.

Officer Richard Brasuell from the Houston Police Department was dispatched to respond to a call about a person "down" in a vehicle. He arrived not long after the fire department. Appellee was sitting outside of her vehicle. Officer Brasuell spoke to the witnesses and talked to other people at the scene. Fajkus told him that she saw Appellee

---

[1] She said that the school was overcrowded.

behind the wheel of her vehicle, with the engine running and keys in the ignition, and that she had to bang on vehicle "to get [Appellee] to wake up." Fajkus also told Officer Brasuell that Appellee "smelled like a bar" and "couldn't walk a straight line." None of the witnesses observed Appellee "operating" her vehicle.

When Officer Brasuell made contact with Appellee, he believed that she was intoxicated. According to him, Appellee smelled like alcohol, and she was slurring her words. She was also disoriented and had bloodshot, glassy eyes. Officer Brasuell asked Appellee where she was coming from, and Appellee's responses were confusing. At one point she said that she was coming from home, but then she said that she was coming from her parent's house and was headed to work.[2] She claimed not to know why she was sleeping in her vehicle and said that she had never drank alcohol. Officer Brasuell offered to administer standard field sobriety tests, and he requested a blood sample, but Appellee refused both.

Officer Brasuell did not see Appellee "operate" her vehicle, but he thought that he had probable cause to arrest Appellee. He said that witnesses told him that they found Appellee behind the wheel of her vehicle asleep on a public roadway intoxicated. They also told him that the vehicle's engine was running when Appellee was discovered. Officer Brasuell also testified that Appellee admitted to him that she had recently been

---

[2] Officer Brasuell testified that Appellee told him that she was headed to a middle school to pick up her child, but his bodycam footage, which was admitted at the hearing, showed that Appellee told him that she was headed to work.

driving.[3] Officer Brasuell agreed with defense counsel that it was possible that Appellee had arrived in her vehicle at 10:00 a.m. that morning or even the night before, but he said that is not what he believed happened.[4]

Appellee was charged by information with DWI. She filed a pretrial motion to suppress, and the court granted the motion, The State appealed, and the court of appeals affirmed the ruling of the trial court. We granted the State's petition for discretionary review to decide whether the court of appeals erred when it affirmed the trial court's ruling.

### MOTION TO SUPPRESS

In her motion to suppress, Appellee argued that the State had the burden under *Coolidge v. New Hampshire*, 403 U.S. 443 (1971) to prove the lawfulness of her arrest. She also cited the Fourth Amendment and Article 1, Section 9 of the Texas Constitution. During the hearing, the parties focused on whether Officer Brasuell had probable cause to believe that Appellee had driven her vehicle to the elementary school while she was intoxicated. In closing arguments, the State briefly mentioned Article 14.01(b) of the Texas Code of Criminal Procedure dealing with warrantless arrests.[5] Appellee in her

---

[3] *See supra*, note 2.

[4] A search warrant was obtained for Appellee's vehicle, and four empty wine bottles were found. There is no evidence about who consumed the wine or when it was consumed.

[5] The State did not mention the "presence or view requirement" of Article 14.01(b) and neither does Appellee, so we only address the probable-cause issue. TEX. CODE CRIM. PROC. art. 14.01(b) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.").

closing arguments cited the Fourth Amendment, the Fourteenth Amendment, Article I,

Section 9 of the Texas Constitution, and Article 38.23 of the Texas Code of Criminal

Procedure. The trial court granted Appellee's motion to suppress and adopted Appellee's

proposed findings of fact and conclusions of law. The trial court made the following

findings of fact:

(1) On August 20, 2019, around 3:15 p.m., Ashley Fajkus was in a car with her cousin Danny when they drove past an elementary school. She observed the Defendant because her neck was at an odd angle;

(2) The Defendant was in her vehicle, in a long school pickup line, located in the far-right lane of a public roadway. The whole right lane is taken up right before the light for the school line to pick up kids;

(3) Fajkus said the car was in park when she approached the vehicle. She believed the Defendant was having a medical emergency such as a diabetic issue;

(4) Fajkus had no medical training other than some training in high school where she was part of a group of students that trained with the doctors and nurses at Kingwood Medical Center;

(5) Once Fajkus and Danny stopped to investigate, Fajkus ran to the defendant's vehicle and tried to open her car door. The defendant's car doors were all locked, and all of the car windows were up. Fajkus then began pounding on the defendant's car window, without response;

(6) Fajkus pounded on the defendant's vehicle door and window until another person in the pick-up line began calling 911. As soon as 911 was called, the defendant woke up and opened the car door, and asked Fajkus to drive her home;

(7) Fajkus said she smelled alcohol coming from the vehicle, when the Defendant opened the door;

(8) Fajkus testified the defendant was not driving or doing anything to operate the vehicle;

(9)     Fajkus testified that she had no idea how long the Defendant had been at the school pickup line. When she first saw the Defendant, they were all at a standstill. There was already a line in front and behind her;

(10)    Fajkus told officer Brasuell that she had not seen the Defendant driving that day;

(11)    Fajkus testified that at the time when she approached the Defendant's vehicle, the children had not yet been released from school, but recalled they were released a few minutes later. There were quite a few people going around the defendant. The cars were bumper to bumper;

(12)    Only April 20, 2019 Tasha Luce, teacher at Humble ISD, was present at the school pickup line;

(13)    Luce testified that she approached the Defendant's vehicle where she observed the Defendant to be out of her car, standing with Fajkus and [Fajkus's cousin] behind the Defendant's car;

(14)    Luce approached the car to offer her assistance to move the car in order to avoid blocking the pickup line traffic;

(15)    Luce testified that the Defendant was not driving the vehicle at the time she approached, and was not sure how long the Defendant had been in the school pickup line;

(16)    Luce stated that Defendant was polite when she approached the scene. When Luce offered to move the car for the Defendant, she said sure and got into the passenger seat. Luce then drove the defendant in her car over to the nearby daycare;

(17)    After she moved the car, Luce kept the Defendant's keys to her car;

(18)    The fire department arrived and checked the Defendant for any medical issues, while waiting for the police to arrive;

(19)    The police arrived about 10 minutes after the fire department. When he arrived, Officer Richard Brasuell saw the Defendant sitting outside of her car;

(20)     Officer Brasuell is a Houston Police Officer with three years' experience;

(21)     Officer Brasuell testified that he has made about 15 to 20 DWI arrests, but none since he arrested the Defendant;

(22)     Officer Brasuell received a call for a person down in a vehicle;

(23)     When he approached the scene, he observed the Defendant sitting outside her vehicle;

(24)     Officer Brasuell spoke with Fajkus and asked whether she saw the defendant driving. Fajkus responded that she did not see the defendant driving the vehicle;

(25)     Officer Brasuell testified that he did not see the Defendant driving her vehicle;

(26)     Officer Brasuell further testified, that after talking [to] all the witnesses on the scene, no one saw the Defendant operating her vehicle;

(27)     On cross examination, Officer Brasuell agreed that in exhibit one, Luce stated several times, "I just came up after they had already taken the keys."

(28)     Officer Brasuell testified he had no idea when the Defendant arrived at the school pickup line. He agreed that the Defendant could've arrived in the line at 10 AM or even earlier;

(29)     Officer Brasuell testified that he arrested the Defendant for suspicion of driving while intoxication;

(30)     The Defendant refused a standardized field sobriety test and a specimen of her blood that was requested;

(31)     Officer Brasuell's partner inventoried the vehicle and observed four empty wine bottles;

(32)     [Officer Brasuell] further testified that he had no idea when these wine bottles were consumed;

(33)    Officer Brasuell further agreed that it is possible that the Defendant
        could've been at the school pickup line the night before;

(34)    The court finds the witnesses Fajkus, Luce, and Officer Brasuell's
        testimony to be truthful and credible in their testimony in this court.

The trial court made the following conclusions:

(1)    A Defendant "operates" a motor vehicle when the totality of the
       circumstances demonstrates that the defendant took action to affect
       the functioning of a vehicle in a manner that would enable the
       vehicle's use. *Tex. Dep't of Pub. Safety v. Allocca*, 301 S.W.3d 364,
       368 (Tex. App.—Austin 2009, pet. denied) (citing *Denton v. State*,
       911 S.W.2d 388, 390 (Tex. Crim. App. 1995)).

(2)    Although a Defendant need not move a vehicle in order to "operate"
       a vehicle, there must be "at least one additional factor, other than the
       driver being asleep with the engine running, that indicated the driver
       had attempted or intended to drive the vehicle." *Id.*

(3)    Evidence is insufficient to support a conviction for driving while
       intoxicated if there is no other evidence to show that the Defendant
       was driving the vehicle or that she was intoxicated at the time she
       was driving. *Coleman v. State*, 704 S.W.2d 511, 512 (Tex. App.—
       Houston [1st Dist.] 1986, pet. ref'd). This is true even if there is
       testimony that indicates a Defendant is intoxicated when officers
       arrive at the scene. *Id.*

The trial court relied heavily on *Allocca*, 301 S.W.3d at 368 (citing *Denton*, 911

S.W.2d at 390), which is an Article 14.01(b) case that did not deal with the "presence or

view" requirement.[6] In that case, the court of appeals concluded that there was

insufficient evidence of "operation" to establish probable cause. In reaching that

conclusion, the court of appeals held that evidence of "operation" is insufficient unless

---

[6] *Allocca*, 301 S.W.3d at ("Viewing the totality of the circumstances, we conclude that
[the arresting officer], in finding Allocca asleep in his vehicle, did not have probable cause to
believe he was operating *or had operated* his vehicle while intoxicated.") (emphasis added).

there is "at least one additional factor, other than the driver being asleep with the engine running, that indicated the driver had attempted or intended to drive the vehicle." *See id.* at 369. The conclusions of law did not cite Article 14.01(b), the Texas Constitution, or the Fourth Amendment.

## COURT OF APPEALS

The State argued on appeal that the evidence of "operation" was sufficient because it shows that Appellee was found asleep in the driver's seat of her vehicle, the engine running, on a public roadway. The only reason it was not moving at the time is that the "riders" had not yet been released from school. It pointed out that Appellee said that she was driving somewhere, either to work or from home to get her son. It also argued that multiple people observed that she was intoxicated. Either way, according to the State, Officer Brasuell believed that Appellee admitted to having recently driving her vehicle. The State contended that *Allocca* was distinguishable. According to it, unlike in this case, the vehicle in *Allocca* was parked in a legal parking spot, the appellant was found asleep in the middle of the night, he testified that he woke up and turned on the vehicle only to use the air conditioning, and the driver's seat was reclined. The State also cited a number of other cases for support: *Oliva v. State*, 525 S.W.3d 286, 296 (Tex. App.—Houston [14th Dist.] 2017); *Abraham v. State*, 330 S.W.3d 326, 330–31 (Tex. App.—Dallas 2009, pet. dism'd); *Chilman v. State*, 22 S.W.3d 50, 56 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *State v. Parson,* 988 S.W.2d 264, 267–68 (Tex. App.—San Antonio 1998, no pet.); *Elliott v. State*, 908 S.W.2d 590, 591–92 (Tex. App.—Austin 1995, pet. ref'd)).

The court of appeals affirmed the ruling of the trial court based on the lack of evidence about "operation": "The circumstantial evidence was insufficient to establish a temporal link between appellee's intoxication and her driving." *Espinosa*, 650 S.W.3d at 856 (citing *Kuciemba v. State*, 310 S.W.3d 460, 461 (Tex. Crim. App. 2010)). It reasoned that:

> Appellee did not admit to drinking, there were no positive breathalyzer results or failed field sobriety tests to suggest if, when, and how much, if any, alcohol was consumed, none of the witnesses knew how long appellee's vehicle was in the location where she was observed, no one saw appellee drive or operate her vehicle, and the testimony indicates appellee did not express an intent to drive or operate her vehicle.

The court of appeals also distinguished the cases relied on by the State because, in those cases, at least one other factor (as required in *Allocca*) supported the fact that the accused had operated a vehicle in a public place while intoxicated. *Id.* at 858 (citing *Oliva*, 525 S.W.3d at 296; *Abraham*, 330 S.W.3d at 330–31; *Chilman*, 22 S.W.3d at 56; *Parson*, 988 S.W.2d at 267–68; *Elliott*, 908 S.W.2d at 591–92).

Justice Jewell dissented. He argued that the evidence of "operation" was sufficient and that *Allocca* was distinguishable. According to him, the evidence was sufficient because, at the time of Appellee's arrest, Officer Brasuell knew that,

> Appellee was discovered asleep at the wheel of her running vehicle, with the keys in the ignition and the gearshift in "park," in an active public roadway then occupied by a line of "bumper-to-bumper" cars waiting to pick up children from school. Although the line of cars was not moving when Fajkus first saw appellee, Luce testified that traffic usually began building for school pick-up around 3:00 p.m., and Fajkus saw appellee slumped in her car with her neck at an odd angle around 3:15 p.m. According to Luce, appellee's vehicle was about the fifth car in line. Fajkus smelled an odor of alcohol emanating from appellee's vehicle when the door opened. Fajkus told Officer Brasuell that appellee "smelled like a bar"

and "couldn't walk a straight line." In addition, Officer Brasuell testified to numerous signs of intoxication that he observed in appellee when he arrived at the scene, including slurred speech, disorientation, confusion, unsteadiness, red and "glossy" eyes, and a strong odor of alcohol emanating from her person. Also significant, appellee told Officer Brasuell that she was on her way to work from her parents' house, and she told Luce that she was on the way to a nearby middle school. Regardless of which statement was true, appellee's affirmative statements to the officer confirmed that she was necessarily in the process of driving somewhere when she was found.

*State v. Espinosa*, 650 S.W.3d 849, 860 (Tex. App.—Houston [14th Dist.] 2022, pet. granted) (Jewell, J., dissenting). Justice Jewell asserted that *Allocca* was distinguishable because Appellee was not parked in a legal parking spot. She was parked in a moving traffic lane that just happened to be at a standstill because a school pickup line had begun to form. He also pointed out that Appellee's seat was not reclined when she was found. He thought that the most probable scenario based on the evidence was that Appellee drove to the school while intoxicated and parked in the forming pickup line.

Justice Jewell also disagreed with the majority that there was insufficient evidence of a temporal link. He cited evidence that Appellee indicated that she had been driving and that she was found in her parked vehicle on a public roadway with the engine running in a school pickup line that had begun to form about 15 minutes before she was found. Justice Jewell stated that the majority erred in relying on legal sufficiency cases, possibly resulting in it conflating a legal sufficiency and probable-cause analyses.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress using a bifurcated standard for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We defer to a trial court's findings of fact that are supported by the record.

*Id.* We review de novo legal questions and mixed questions that do not turn on credibility and demeanor, such as facts of a case that would establish probable cause. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). The evidence and all reasonable inferences are viewed in the light most favorable to the trial court's ruling, and the trial court's ruling must be upheld if it is reasonably supported by the record and is correct under a theory of law applicable to the case. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

## APPLICABLE LAW

### a. Probable Cause for a Warrantless Arrest

"A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." TEX. CODE CRIM. PROC. art. 14.01(b). Warrantless arrests under Article 14.01(b) must be supported by probable cause. *See Beverly v. State*, 792 S.W.2d 103, 104 (Tex. Crim. App. 1990). Probable cause exists under Article 14.01(b) if, when the arrest is made, the facts, circumstances, and reasonably trustworthy information known to the arresting officer, are sufficient for a prudent person to conclude that an individual committed or was committing a criminal offense. *State v. Martinez*, 569 S.W.3d 621, 628 (Tex. Crim. App. 2019) (quoting *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011) (quoting *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002)). Probable cause is a commonsense, nontechnical concept that deals with "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 232

(1983) in turn quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). "Probable cause deals with probabilities; it requires more than mere suspicion, but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Specific and articulable facts are required. *See State v. Woodard*, 341 S.W.3d 404, 411–12 (Tex. Crim. App. 2011). A mere suspicion or hunch is insufficient. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). To determine if probable cause existed, we consider the totality of the circumstances. *Adkins v. State*, 764 S.W.2d 782, 785 (Tex. Crim. App. 1988).

### b. DWI

A person is guilty of DWI if he operates a motor vehicle in a public place while intoxicated. TEX. PENAL CODE § 49.04. To determine if a person operated a motor vehicle, "the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use."[7] *Denton*, 911 S.W.2d at 390.

### ANALYSIS

### a. Appellee's Arguments

The only issue in this case is whether Officer Brasuell had probable cause to believe that Appellee had recently operated a vehicle. Appellee argues that the evidence

---

[7] *Denton* was a legal sufficiency case, but the parties cite its "operation" definition as the controlling one. *Denton*, 911 S.W.2d at 390. We will assume without deciding that it is correct.

was insufficient for multiple reasons. First, she agrees with the court of appeals that there is no evidence of a temporal link between Appellee's operation of her vehicle and her intoxication, and she contends that the State and dissent are wrong to conclude otherwise because they have misinterpreted the record. Second, Appellee argues that the court of appeals correctly concluded *Allocca* controlled. Third, she argues the trial court's findings of fact and conclusions of law are supported by the record, but that the State asks this Court to ignore them.

### b. Temporal Link

Appellee contends her statements about where she was coming from and where she was headed were not admissions that she had recently operated her vehicle. According to Appellee, because there is no evidence showing when she arrived in her vehicle, she could have driven to the school at any time before she was found, including before she became intoxicated.[8]

We disagree and think that her statements could be interpreted by a prudent person as admissions, especially when considered in light of the other evidence. The video admitted into evidence showed Officer Brasuell and Appellee interacting, and she never indicated that she arrived in her vehicle hours or even a day before she was approached. Further, her vehicle was fourth or fifth in a bumper-to-bumper line of vehicles that had begun to form about 15 to 30 minutes before Appellee was found. If Appellee's version of events were true, it could mean that the first three or four drivers to arrive after

---

[8] Appellee asserts that there is no evidence that her statements were true, but we agree with the State that Officer Brasuell had no obligation to investigate the truth of her statements.

Appellee saw her sitting in the driver's seat of her vehicle and nonetheless drove past her and reversed until they were ahead of her in the bumper-to-bumper line of traffic. While that is possible, we do not look to possible innocent explanations when determining whether probable cause existed to make a warrantless arrest. *See Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997) (rejecting focusing on innocent explanations when determining whether reasonable suspicion existed); *Tate v. State*, 500 S.W.3d 410, 415 (Tex. Crim. App. 2016) (rejecting the same in legal sufficiency analyses). The only question under Article 14.01(b) is whether the facts, circumstances, and reasonably trustworthy information known to the officer at the time of arrest would have allowed a prudent person to conclude that an individual committed or was committing a criminal offense. *Martinez*, 569 S.W.3d 621, 628 (Tex. Crim. App. 2019) (quoting *Woodard*, 341 S.W.3d at 412 in turn quoting *Steelman*, 93 S.W.3d at 107). Also, critically, probable-cause assessments are based on probabilities and common sense. *Ornelas*, 517 U.S. at 695 (quoting *Gates*, 462 U.S. at 232 (1983) in turn quoting *Brinegar*, 338 U.S. at 175). Appellee's interpretation of the record stretches credulity.

Appellee also argues that "[t]here is nothing in the record to suggest the proximity of any vehicle to another." However, Fajkus expressly testified that the line was bumper-to-bumper and that there were vehicles in front and behind Appellee's. Fajkus also said that the vehicles were "stacked up pretty nice." With respect to Appellee's argument that the evidence does not show that the pickup line began to form about 15 minutes before Appellee was found, we agree that the evidence does not directly show that, but it is a reasonable deduction. Luce said that most years the line usually began to form around

3:00 p.m., but in 2019, the line began to form, "goodness, before 3:00 o'clock," because of overcrowding in the school. Luce did not say exactly how long before 3:00 p.m. the pickup line began to form, but it would be reasonable to infer based on the context of her testimony that it was probably shortly before 3:00 p.m.

### c. *Allocca* is Distinguishable

Appellee agrees with the court of appeals in finding that *Allocca* controls. According to her, other than Appellee being found asleep behind the wheel of her vehicle, with the engine running, in a moving lane of traffic, there was no other indication that she had recently operated her vehicle. *Allocca* does not control. This Court has never adopted the court of appeals' reasoning, and it is distinguishable.

In *Allocca*, the appellee's vehicle was legally parked in a parking spot with the engine running, and he was found sleeping in his vehicle with the driver's seat reclined at 1:45 a.m. in the morning. *Allocca*, 301 S.W.3d at 371. The appellee testified that he woke up and was hot, so he started the vehicle to use the air conditioning. *Id.* at 366. On the other hand, Appellee's vehicle was seen in the middle of the day parked in a moving lane of traffic where the school pickup line had recently begun to form, she was asleep at the wheel in the driver's seat, which was not reclined, and she had no explanation for why she was asleep in her vehicle.

### d. The Trial Court's Findings of Fact

Last, Appellee argues that the trial court's findings of fact are supported by the record, but that the State ignores the findings and its conclusion that probable cause existed. However, Appellee does not point to any particular finding that the State ignores,

and we have found none. Whether probable cause existed is a mixed question of law and fact that does not turn on credibility and demeanor. *Ross*, 32 S.W.3d 853 at 856. On appeal, a finding of probable cause is reviewed de novo. *Id.* We understand the State to argue that, even when the evidence is viewed in the light most favorable to the trial court's ruling, we should conclude on de novo review that the facts permitted a prudent person to conclude that Appellee had recently operated her vehicle in a public place while intoxicated.

## CONCLUSION

Because we conclude that Officer Brasuell had probable cause to arrest Appellee for DWI, we reverse the judgment of the court of appeals and vacate the ruling of the trial court granting the motion to suppress. This case is remanded to the trial court for further proceedings.

Delivered: April 12, 2023

Publish